McGraw, J., filed a concurring opinion in which Miller, C.J., joined.

298 S.E.2d 813

**STATE of West Virginia**

v.

**Clarence E. MYERS.**

**No. 15296.**

Supreme Court of Appeals of
West Virginia.

June 17, 1982.

Concurring Opinion Dec. 9, 1982.

Robert G. Durnal, Junior, for appellant.

Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

NEELY, Justice:

This is an appeal from a jury verdict that found the appellant, Clarence E. Myers, guilty of two counts of involuntary manslaughter arising from an automobile collision. The Circuit Court of Randolph County sentenced the appellant to two one-year jail sentences to run consecutively.

During a rainstorm on the evening of 15 August 1980, the appellant was driving his blue Charger south on Route 250 at speeds of 70 to 80 miles per hour in both the fifty-five and thirty-five miles per hour zones. Having just passed a southbound vehicle, the appellant was still in the northbound lane when he collided with an approaching vehicle. As a result of the collision two people in the northbound vehicle died.

The appellant was indicted on two counts of involuntary manslaughter at the September 1980 term of the Randolph County Circuit Court. The two counts were tried together in one trial. The jury found him guilty on both counts, and the trial court sentenced the appellant to one year in the Randolph County Jail for each charge. The court specified that the sentences were to be served consecutively.

The appellant contends that the trial court erred in directing that his sentences be served consecutively.[1] For authority he cites *Myers v. Murensky*, 162 W.Va. 5, 245 S.E.2d 920 (1978), in which we ruled that our negligent homicide statute, *W.Va. Code*, 17C–5–1(a) [1976], creates only one criminal offense regardless of the number of deaths caused by the single act of negligent driving. The appellant argues that

---

1. The appellant also assigned as error the court's decision to admit the victim's death certificates after the close of the State's case, the court's refusal to instruct the jury that the accident was caused by circumstances beyond the appellant's control, and the prosecutor's characterization of the appellant's driving during closing argument. Having examined the record as to the merits of these three assignments, we find them to be frivolous and hence not fairly raised.

this construction was made applicable to our involuntary manslaughter statute, *W.Va.Code*, 61–2–5 [1923], in *State v. Vollmer*, 163 W.Va. 711, 259 S.E.2d 837 (1979), in which we held that the State may use either the negligent homicide statute or involuntary manslaughter to charge an offense arising out of an automobile accident resulting in death.[2] However, upon considering the matter in the present context, we conclude that we incorrectly interpreted the legislative intent in our negligent homicide statute and that the legislature intended the punishment to reflect the gravity of the crime's consequences. Therefore we overrule *Murensky* to the extent that it prohibits consecutive punishments for acts that result in more than one death.

 In so holding we are following the majority view that multiple deaths resulting from a single negligent operation of a motor vehicle may be charged and punished as separate offenses. *See Murensky*, 162 W.Va. at 6, 245 S.E.2d at 921. These jurisdictions recognize that the crime charged is one against people as opposed to property. When a crime is committed against people rather than property, the general rule is that there are as many offenses as there are individuals affected. *See e.g., Vigil v. State*, 563 P.2d 1344 (Wyo. 1977). Cases in a majority of jurisdictions also reason that consecutive punishments are justifiable because the gravamen of the offense is the damage it does, not the recklessness it implies. *See, e.g., State v. Whitely*, 382 S.W.2d 665 (Mo.1964).

This second argument is especially applicable when the charges are brought under our involuntary manslaughter statute which is found in Article 2, Chapter 61 of the *W.Va.Code* which is entitled "Crimes Against the Person." However, we think

it is also applicable to the negligent homicide statute which is found in Chapter 17C of our statutes dealing with motor vehicles. To paraphrase the Supreme Court of Wisconsin when it discussed homicides resulting from drunk driving in *State v. Rabe*, 96 Wis.2d 48, 76, 291 N.W.2d 809, 822 (1980), one who drives recklessly "may well expect to contribute to 'awesome carnage' and . . . when multiple deaths result, may expect multiple consequences."

We agree with the Supreme Court of Wisconsin that the proper analysis is not that a reckless driver is victimized when he causes more than one death. Rather the proper analysis is that a reckless driver who causes only one death is fortunate given the likelihood that more deaths could have resulted.

Our holding today is given further support by Justice Miller's reasoning in *State ex rel. Watson v. Ferguson*, 166 W.Va. 337, 274 S.E.2d 440, 446 (1980), where he wrote:

There can be little doubt that one function of a criminal justice system is to enable those individuals who have been victimized by the criminal acts of another to find some individual vindication of the harm done to each. Certainly, the degree of culpability, and as a consequence the degree of punishment, must bear some proportion not only to the magnitude of the crime but also to the number of victims involved. These are fundamental considerations that society expects from a criminal justice system.

As Justice Miller noted, it is consistent with the goals of our criminal justice system that both society as a whole and the relatives of the victims individually be able to attain some sense of vindication by punishing the appellant separately for each

---

**2.** The Legislature has recently amended *W.Va. Code*, 17C–5–2 [1981] to provide that anyone driving under the influence of liquor or drugs who "does any act forbidden by law or fails to perform any duty imposed by law" shall be guilty of a criminal offense if that act or omission proximately causes the death of a person. If the act or failure is committed in reckless disregard of the safety of others and the influence of alcohol or drugs is a contributing cause to the death, then the driver is guilty of a felony punishable by confinement in the penitentiary for not less than one nor more than three years and a fine of not less than one thousand dollars. *W.Va.Code*, 17C–5–2(a) [1981]. Otherwise the act or neglect is a misdemeanor punishable by confinement in the county jail for not less than ninety days nor more than one year and a fine of not less than five hundred nor more than one thousand dollars. *W.Va.Code*, 17C–5–2(b) [1981].

outrageous consequence of his negligent actions. The only question is whether such punishment violates the double jeopardy clause.

We have ruled that double jeopardy applies in three basic situations:

"The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." Syl. pt. 1, *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977); *See United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975).

Our recent cases on double jeopardy have tended to focus on the first two situations, with particular attention to the problem of the propriety of multiple trials where two or more offenses are part and parcel of the same transaction. *E.g. Watson v. Ferguson, supra; State ex rel. Johnson v. Hamilton*, 164 W.Va. 682, 266 S.E.2d 125, *cert. denied*, 449 U.S. 1036, 101 S.Ct. 613, 66 L.Ed.2d 498 (1980). The third situation described by our Court in *Conner*, namely, the protection against multiple punishments, is supported by reasoning separate and distinct from that used to prohibit multiple trials. Multiple trials are barred in order to protect individuals from prosecutorial badgering and harassment. The double jeopardy bar against multiple punishments is to prohibit judges from imposing more penalty than the legislature has sanctioned. *See State ex rel. Watson v. Ferguson*, 166 W.Va. at 346–347, n. 14, 274 S.E.2d at 445, n. 14.

The double jeopardy prohibition against multiple punishments is usually encountered in two types of cases. The first is where the defendant is charged with committing both a lesser included offense and the greater offense. In these cases the courts will examine legislative intent to determine whether multiple punishments are mandated. *See, e.g., Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). If they are mandated, the multiple punishments pass double jeopardy scrutiny. The second type of case involves instances where there has been an ongoing criminal scheme such as embezzlement and there is a question of whether such activity constitutes one crime or several separate crimes. *E.g., State v. Riley*, 169 W.Va. 354, 287 S.E.2d 502 (1982) (check forging). In such cases courts focus on the evidence to determine whether there have been separate crimes meriting separate punishments. *Id.*

The case before us today is unlike either of these two types of cases. The appellant was charged with two counts of the same offense which distinguishes it from the first type. It is different from the second type because there is no question that the charges arose as a result of a single act. However, when faced with a case like this, courts in other jurisdictions use the analysis of both of the above types of double jeopardy cases. They examine the legislative intent to permit multiple punishments as indicated by the first type of case, and they examine whether the facts constitute separate offenses as done in the second type. *E.g., State v. Rabe, supra.* Having already concluded that the legislature, by placing the involuntary manslaughter statute in the article of the *Code* dealing with crimes against the person, intended multiple punishments to be warranted in the instance of multiple deaths, we turn to an examination of whether the evidence demonstrates that there were separate offenses.

We note that evidence that proves one charge of involuntary manslaughter in this case is not sufficient to prove the second. In any case of homicide there must be proof of the identity of the deceased and the causation of death. In such a case as this, a defendant's proof that one of the victims died of a heart attack prior to the collision would be a complete defense to the charge of involuntary manslaughter. This difference in proof between the two charges, permits multiple punishment in such a case. What we have described is essentially the "same evidence" test, *see Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221,

53 L.Ed.2d 187 (1977), applied to the double jeopardy bar against multiple punishments for the same offense. Therefore, in consonance with our holding in *State ex rel. Johnson v. Hamilton*, 164 W.Va. 682, 266 S.E.2d 125, *cert. denied*, 449 U.S. 1036, 101 S.Ct. 613, 66 L.Ed.2d 498 (1980), and *State ex rel. Watson v. Ferguson, supra*, we hold today that where there is legislative intent to permit multiple punishments arising from the same act, multiple punishments are permissible as long as each charge meriting punishment requires at least one piece of evidence that is not needed to prove other charges. Applying this rule to the case before us, we hold that when charged under either the negligent homicide statute *W. Va. Code*, 17C–5–1 [1981], or the involuntary manslaughter statute, *W. Va. Code*, 61–2–5 [1923], for multiple deaths resulting from a single act, a defendant may receive as many consecutive sentences as there were deaths.

In affirming the consecutive sentences in the case before us, we note that there is no *ex post facto* problem because the *Murensky* prohibition against such sentences had never been applied to our involuntary manslaughter statute. *State v. Vollmer*, 163 W.Va. 711, 259 S.E.2d 837 (1979), held only that the State could draft charges under either the negligent homicide statute or the involuntary manslaughter statute in a situation involving an automobile accident that resulted in death. Nowhere in that opinion was there a specific finding that the limitations of consecutive sentencing under the negligent homicide statute also applied to the involuntary manslaughter statute. Today's interpretation of our involuntary manslaughter statute is entirely in consonance with the overwhelming weight of authority elsewhere, *see Murensky, supra*, and presents no departure from what has always been considered the law of this State.

Accordingly for the reasons stated above the judgment of the Circuit Court of Randolph County is affirmed.

Affirmed.

McGRAW, Justice, concurring:

The appellant makes two distinct arguments in this case. First, he contends that past decisions of this Court involving negligent homicide and involuntary manslaughter result in the conclusion here that a motor vehicle accident results in only one offense regardless of the number of deaths which result. Second, he argues that this Court's application of double jeopardy principles prevents the imposition of two punishments for deaths which result from one automobile accident.

Myers' first argument is based on two earlier decisions. In *Myers v. Murensky*, 162 W.Va. 5, 245 S.E.2d 920 (1978), we held that W.Va.Code § 17C–5–1(a) (1974 Repl. Vol.), the state's negligent homicide statute, created only one offense even when more than one person died in a motor vehicle accident. We reached this conclusion by applying the rule of lenity in which ambiguous penal statutes must be construed against the state. Syllabus Point 1, *Myers v. Murensky, supra*. Since the statute did not specifically make each death a separate offense, we interpreted it in a limited manner.

One year later, we ruled in *State v. Vollmer*, 163 W.Va. 711, 259 S.E.2d 837 (1979), that a person could be charged with either negligent homicide or involuntary manslaughter in cases involving motor vehicle deaths. This holding was based on the fact that both the negligent homicide statute and the crime of involuntary manslaughter consisted of the same elements and carried the same penalties with respect to deaths resulting from a motor vehicle accident. Syllabus Point 3, *State v. Vollmer, supra*.

As a consequence, the appellant contends that since he was charged with involuntary manslaughter, the rule prohibiting multiple punishments in negligent homicide cases should be applied to involuntary manslaughter charges. He interprets *Vollmer* as equating negligent homicide and involuntary manslaughter; therefore, a motor vehicle accident creates one offense regardless of whether the accused is charged with negligent homicide or involuntary manslaughter.

The majority refutes this argument by overruling the Court's prior interpretation of the negligent homicide statute in *Myers.* As we pointed out in *Myers, supra,* the majority view is that a single automobile accident may result in multiple offenses.

Our reinterpretation of the negligent homicide statute is supported by recent amendments to it made by the Legislature. Although not directly on point, the Legislature's action in increasing the allowable penalties and punishments that may be imposed for deaths in motor vehicle crashes resulting from use of alcohol or other drugs, W.Va.Code § 17C–5–2 (1982 Cum. Supp.), makes the statute less ambiguous regarding multiple punishments and makes application of the rule of lenity less compelling.

The appellant's second argument is based on prior decisions regarding double jeopardy. However, he does not take into account the most recent pronouncements by this Court regarding the proper constitutional test to determine whether multiple punishments have been imposed for the same offense. Additionally, the majority opinion does not fully explain our development of double jeopardy principles.

The state constitutional prohibition against double jeopardy is found in article 3, section 5 of the West Virginia Constitution. Under this provision, a person may not "be twice put in jeopardy of life or liberty for the same offence [*sic* ]." W.Va. Const. art. 3, § 5. This simple declaration has spawned much confusion over how to determine whether the "same offense" provision has been violated.

In *State ex rel. Dowdy v. Robinson,* 163 W.Va. 154, 257 S.E.2d 167 (1979), the Court ruled that either the "same evidence" or "same transaction" test could be used to determine whether a person was being tried twice for the same offense. Syllabus Point 1, *State ex rel. Dowdy v. Robinson, supra.* This case arose in the context of an individual who had been reindicted on a charge for which he claimed he had already been acquitted. The prohibition of such action by the state is a classic purpose of constitutional double jeopardy

protection. "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." Syllabus Point 1, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977).

Briefly explained, the same evidence test looks to whether the state must prove different facts for different offenses. If so, then the offenses are different; if the proof is the same, then only one offense has been committed and multiple punishments may not be imposed. The same transaction test looks to the criminal act itself. If the offense charged arose out of a single criminal transaction or occurrence, then the accused may be charged with only one offense.

We considered double jeopardy again in *State ex rel. Johnson v. Hamilton,* 164 W.Va. 682, 266 S.E.2d 125 (1980). That case considered a factual situation involving the deaths of a father and son who were shot minutes, perhaps seconds, apart. The result of that case was a constitutional joinder rule which required all offenses resulting from a single transaction to be contained in a multi-count indictment or by separate indictments consolidated at trial. In either method, the Court required the state to try all charges arising out of a single transaction in one trial. However, the majority held that "separate punishments may be imposed for separate offenses arising out of a single criminal transaction." Syllabus Point 3, in part, *State ex rel. Johnson v. Hamilton, supra.* Thus, a bifurcation was created in our double jeopardy rule whereby multiple offenses arising out of the same transaction had to be joined in one trial, but if multiple convictions were obtained they could be separately punished. Consequently, we had a constitutional jeopardy rule involving the same transaction test for joinder of offenses, but a "same offense" test when it came to multiple punishments for the joined offenses.

Soon afterwards, the Court retreated from the constitutional aspects of this joinder rule. In *State ex rel. Watson v. Ferguson*, 166 W.Va. 337, 274 S.E.2d 440 (1980), the defendant had been indicted on four separate counts of murder. He asked that one trial be conducted on all the counts. The trial judge refused his request and held a trial on one count. The defendant was convicted of first-degree murder. He then sought a writ of prohibition against being tried for the remaining three counts.

Much of the Court's discussion in *Watson* centered on the advantages of a procedural rather than a constitutional joinder rule. *Id.*, 166 W.Va. at 345, 274 S.E.2d at 444. We rejected the dichotomy in double jeopardy principles which had been present since *Johnson*.

As we have discussed earlier, the historical concept of double jeopardy centered on what is the same offense. Once it was determined that the offenses were the same, then there could only be one trial and one punishment for that offense. *Johnson* required that all related offenses be tried in one trial even though if separate convictions were obtained on the various counts at trial, separate punishments could be imposed. Thus, there was created a dichotomy between trial and punishment concepts in our double jeopardy doctrine.

*Id.* Therefore, in *Watson*, we adopted the joinder rule as a matter of judicial procedure rather than as a constitutional requirement.

In our subsequent double jeopardy decision of *Gilkerson v. Lilly*, 169 W.Va. 412, 288 S.E.2d 164 (1982), we again emphasized that the same transaction test was not our constitutional double jeopardy rule. There, a 19-year-old was charged with the felony of nighttime breaking and entering and with the misdemeanor of contributing to the delinquency of a minor in connection with the theft of certain items from an ice cream establishment. Gilkerson pled guilty to the misdemeanor crime in magistrate court. He then claimed that since both charges arose out of the same transaction, and they had not been joined, his plea of guilty to the misdemeanor prevented his trial on the felony charge.

In our holding, we reiterated the procedural joinder rule announced in *Watson* and again rejected the same transaction test as a constitutional test for determining when a person has been tried or punished twice for the same offense. Rather, "the same transaction test for double jeopardy purposes is a procedural rule that is not mandated by either the State or federal constitutions but is in furtherance of the general policy enunciated in the double jeopardy clauses." Syllabus Point 2, *Gilkerson v. Lilly, supra*.

The result of these cases, and the point of this review of them, is to clearly point out that the same transaction test is not to be used to determine whether a person has been tried or convicted more than once for the same offense for jeopardy purposes. It is to be used to determine when multiple offenses arising out of a single criminal transaction can be joined for a single trial. *Cf. State v. Mitter*, 168 W.Va. 531, 285 S.E.2d 376, 380 (1981).

The focus of double jeopardy analysis remains the determination of whether the individual has been charged, tried or punished more than once for the same offense. This determination is to be made by use of the same evidence test "which provides that offenses are the same unless one offense requires proof of a fact which the other does not." Syllabus Point 1, in part, *State ex rel. Dowdy v. Robinson, supra*.

Applying this test to the facts present, it is clear that the appellant was charged and convicted of two separate offenses. In proving each offense, the state had to prove the identity of each victim of the accident. The identity of each person was a distinct piece of evidence relevant only to each offense charged. Thus, two separate offenses occurred when the accident resulted in two deaths. Using the procedural same transaction joinder rule, the offenses were joined for one trial, but separate punishments were imposed for separate offenses. A relevant factor in our jeopardy analysis is a review of the criminal act itself and the extent of the defendant's

**284**

criminal culpability, particularly among multiple victims as we explained in *State ex rel. Watson v. Ferguson, supra.*

In any analysis of the policies underlying double jeopardy in the area of offenses against multiple victims, it must be recognized that the extent criminal culpability cannot be answered merely by looking at the shortness of the time frame. Some consideration must be given to the defendant's criminal acts and intent. We do not conceive that in fashioning a double jeopardy policy ... that we can ignore the fact that multiple victims have been the subject of the defendant's acts. There can be little doubt that one function of a criminal justice system is to enable those individuals who have been victimized by the criminal acts of another to find some individual vindication of the harm done to each. Certainly, the degree of culpability, and as a consequence the degree of punishment, must bear some proportion not only to the magnitude of the crime but also to the number of victims involved. These are fundamental considerations that society expects from a criminal justice system.

*Watson,* 166 W.Va. at 348, 274 S.E.2d at 446.

There can be no doubt that this Court has wavered between different applications of double jeopardy principles. However, our most recent decisions have clearly rejected the same transaction test as our constitutional double jeopardy test to determine whether an individual has been tried or punished for the same offense more than once. That function rests with the same evidence test.

I am authorized to state that Chief Justice MILLER joins in this concurrence.