**James DUNLOP, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–278.**

Court of Appeals of Alaska.

March 15, 1985.

---

James E. Gorton, Jr. and William B. Oberly, Gorton & Oberly, Anchorage, for appellant.

James E. Dunlop, pro se.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

In this case we are presented with the difficult question of whether two sentences may be imposed for two manslaughter convictions arising out of the same conduct. A careful reading of the Alaska Supreme Court's decision in *Thessen v. State*, 508 P.2d 1192 (Alaska 1973), compels our conclusion that separate sentences may not be imposed under the circumstances presented here.

At approximately 3:00 a.m. on March 18, 1983, James Dunlop left a local bar. He was extremely intoxicated, but he agreed to drive a friend's car. Shortly thereafter, Dunlop hit two pedestrians at an intersection. At trial, the superior court concluded that the physical evidence at the scene was "consistent with the prosecution's theory that Dunlop had not seen the pedestrians until immediately before or just as the car he was driving hit them." [1]

---

1. The description of the facts is based upon the trial court's summary in its "Decision and Order Rejecting Proposed Aggravating and Mitigating Factors." The summary reads as follows:

    (1) On March 18, 1983, James Dunlop drank enough alcoholic beverages, scotch whiskey and beer, to make him quite intoxicated. His drinking lasted from approximately 9:00 p.m. until closing time at Chilkoot Charlie's Bar. Dunlop was aware before driving that he had drunk enough liquor and beer to make him, in his words to an investigating officer, "fucked up". Dunlop's driver's license was suspended prior to March 18, 1983, because of a prior conviction for driving while intoxicated.

    (2) Upon leaving Chilkoot Charlie's, Dunlop met another intoxicated person, who, because he was himself too intoxicated to drive, asked Dunlop to drive his car. Although he was aware that he was both intoxicated and that he would be driving illegally, Dunlop accepted the offer and drove the car. Very shortly after leaving the bar, at approximately 3:00 a.m., Dunlop's car hit and killed two pedestri-

Dunlop was convicted by jury trial of two counts of manslaughter. AS 11.41.-120(a)(1). He also pled no contest to leaving the scene of an injury accident. AS 28.35.050(a) and AS 28.35.060. Superior Court Judge Brian C. Shortell found that no statutory aggravating or mitigating factors had been established. He also concluded that AS 11.41.135 allowed separate punishment on the two manslaughter counts, and that other applicable sentencing statutes required that the sentences be consecutive. Accordingly, Judge Shortell sentenced Dunlop to consecutive five-year presumptive terms on the manslaughter counts, and a non-presumptive sentence of five years for leaving the scene, to run concurrently to the second manslaughter term.

■ Dunlop appeals, arguing that the sentence violated the constitutional prohibition on being placed "in jeopardy twice for the same offense." Alaska Const., art. 1, § 9. In *Thessen v. State*, 508 P.2d 1192 (Alaska 1973), the supreme court held that this prohibition would be violated by imposition of more than one sentence for a single act of arson, despite the fact that fourteen people were killed in the fire, and the arsonist stood convicted of fourteen counts of manslaughter. The court began its analysis by pointing out that, because Thessen had been acquitted of first-degree murder as to each victim on a felony-murder theory, the jury had necessarily concluded that Thessen lacked the intent to kill anyone when he set fire to a hotel. *Id.* at 1194. The court then proceeded to analyze the case under *Whitton v. State*, 479 P.2d 302, 310 (Alaska 1970). Its discussion is worth quoting at length:

> Courts have long wrestled with the multifaceted problem of determining what constitutes one offense. Many such cases involve statutes which define separate crimes for piecemeal portions of one transaction. In the posture of this case, however, we are confronted with the violation of but one statute involving multiple victims. The answer to the question will depend in part on whether we focus on the single act of arson or the consequence involving multiple victims. We look first to *Whitton* for guidance in solving this dilemma. After discussing the "same evidence", the "same transaction" tests and other recommended criteria, *Whitton* adopted a more flexible standard than either. The different statutes are to be compared as applied to the facts of the case in order to ascertain whether they involve differences in *intent or conduct*. If such differences exist, they are to be judged in light of the basic interests of society to be vindicated or protected. A decision must then be made as to whether those differences are substantial enough to warrant multiple punishments.

ans at the intersection of Minnesota Drive and 32nd Street. At the point of impact, Dunlop's car was going approximately 30 to 40 miles per hour. The accident scene showed little if any evidence that Dunlop had tried to avoid hitting the two pedestrians. Physical evidence at the scene is consistent with the prosecution's theory that Dunlop had not seen the pedestrians until immediately before or just as the car he was driving hit them. Minnesota Drive is a straight road with street lights which illuminate the area in which the pedestrians were hit.

(3) Upon impact, Dunlop did not stop the car. In fact, one of the victims, Agnes Passamika, remained on the hood. Dunlop continued to drive to 33rd Street where he performed an intentional maneuver to dislodge Ms. Passamika's body. Having succeeded in doing this, he drove away without stopping to check the condition of his victims or to help them. His own admissions after his arrest suggest very strongly that he thought he had only hit one person.

(4) The impact between the car and the victims was violent enough to tear Agnes Passamika's feet out of her boots. Her body was on the hood for a short but definite period of time. Dunlop believed she was dead when he performed the maneuver which dislodged her body from the car, and he did not know, apparently, that he had hit another person.

(5) From impact to flight, the entire incident cannot have taken more than a few seconds. Dunlop knew Passamika was bleeding and he indicated to the investigating officer who interviewed him that his victim's head had struck his vehicle and that he realized the person's neck had been broken and that he knew "he" was dead. Dunlop fled the scene of the accident and remained at large for a few days until he was arrested.

The initial inquiry under *Whitton* is thus directed at a comparison of the different statutes violated as applied to the facts of the case in order to ascertain whether there are differences in intent or conduct. But in the subject case, only one statute is involved. We can compare one count with another and still apply the test. The sole difference between each count was the name of the victim involved. Thessen's intent and conduct were identical as to each count. Since there is an absence of any difference in intent and conduct, we do not reach the other considerations set forth in *Whitton* —the judging of the differences "in light of the basic interests of society to be vindicated or protected". The *Whitton* test for ascertainment of double jeopardy when applied to the multiple counts charged against Thessen dictates the conclusion that but one offense was committed. Where there has been but one statute violated by a single act, without intent to harm multiple victims, the Alaskan constitutional prohibition against placing a person in jeopardy twice for the same offense prevents imposition of multiple punishments.

*Thessen v. State*, 508 P.2d at 1194–95 (footnotes omitted).

The holding of *Thessen* was affirmed in *State v. Gibson*, 543 P.2d 406 (Alaska 1975), and again in *State v. Souter*, 606 P.2d 399 (Alaska 1980). In *State v. Souter*, a defendant was convicted of three counts of drunk-driving manslaughter. The state acknowledged that *Thessen* precluded multiple punishments, but asked the

court to reconsider *Thessen*. 606 P.2d at 400. The court declined to do so. *Id.*

If this case were to be decided solely under *Thessen*, the result would be clear. Alaska Statute 11.41.120(a)(1) provides:

A person commits the crime of manslaughter if the person ... intentionally, knowingly or recklessly causes the death of another person under circumstances not amounting to murder in the first or second degree.

While Dunlop acted recklessly with regard to the lives of his victims, the focus under *Thessen* is upon intent and conduct. 508 P.2d at 1195.[2] As in *Thessen*, "[t]he sole difference between each count was the name of the victim involved." *Id.* Since Dunlop hit both pedestrians at once, but intended to hit neither, it follows that Dunlop's intent and conduct were identical as to each count.

In 1982, however, the legislature enacted AS 11.41.135, which provides that:

If more than one person dies as a result of a person committing conduct constituting a crime specified in AS 11.41.100–11.41.130, each death constitutes a separately punishable offense.

The state correctly points out that AS 11.41.135 was enacted in direct response to *Thessen* and *Souter*.[3] The state argues that *Thessen* merely stated the rule to be applied when the legislative intent is in doubt, and that AS 11.41.135 clears up any doubt. The state further argues that recent decisions of the United States Supreme Court make it clear that "the question of what punishments are constitution-

---

**2.** *See also* 508 P.2d at 1197, where the court stated:

The primary purpose of criminal law is to inhibit antisocial conduct by assigning appropriate punishment. As parodied by Gilbert and Sullivan in the Mikado, the object is "[t]o let the punishment fit the crime." To achieve this purpose the focus must be on the intent and conduct of the perpetrator rather than on fortuitous results.

**3.** The commentary accompanying the legislation was as follows:

The intent of [AS 11.41.135] is to reverse the outcome in cases similar to *Thessen v. State*,

508 P.2d 1192 (Alaska 1973). In *Thessen* the Alaska Supreme Court held that only one homicide conviction may result when a defendant is convicted of setting a fire that kills 14 people. Under [this section] the defendant could be convicted of 14 counts of homicide— one for each death. Multiple convictions would also result in Manslaughter cases where multiple deaths are caused by a defendant who drives while intoxicated, thus reversing the Alaska Supreme Court's holding in cases similar to the factual situation in *State v. Souter*, 606 P.2d 399 (Alaska 1980).

Supp. No. 63 at 2 in House Journal (1982), following p. 2356.

ally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275, 285 (1981). *See also Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

Despite the state's argument, we can reach no other conclusion except that the holding in *Thessen* was based squarely on the Alaska Constitution. References in the opinion are to "our constitutional inhibition," "the Alaskan constitutional prohibition" and "the Constitutional prohibition" against double jeopardy. 508 P.2d at 1194, 1195 and 1197. While the court did discuss cases from other jurisdictions, it explained that each of those cases could be distinguished by the fact that there was an apparent intent to affect more than one victim.

> In the subject case, however, there was no intent to harm anyone and consequently, no intent to harm more than one person. Under these circumstances, it would be a violation of the Alaska double jeopardy prohibition to impose multiple punishments for Thessen's single act, despite its horrendous consequences.

*Id.* at 1197.

Similarly, we must reject the state's contention that the court in *Thessen* specifically invited the legislature to pass a statute like AS 11.41.135 if it wished to have multiple punishments imposed. The court did state:

> A different question would be presented if the Legislature had seen fit to increase the punishment for a single act of manslaughter by means of arson of a multiple-family dwelling. Although the jury's verdict absolved Thessen of any intent to kill, they did find that he intended to burn the Lane Hotel, and his conduct was such that he did so. Setting fire to a hotel where numerous people sleep does not involve the same conduct or intent as setting fire to a single family dwelling or an abandoned shed. The most grave of societal interests, preser-

vation of the sanctity of life, is involved. If the Legislature so desired, it could recognize this interest by increasing the penalties for this offense. The Legislature has not seen fit to make this distinction.

508 P.2d at 1195. Also, in *Thessen*, the court said:

> Within constitutional limits, the Legislature has the power to impose whatever punishments it deems appropriate for specific crimes. In fact, it has had little difficulty in expressing distinctions where it has seen fit to do so. If the Legislature so desired, it could authorize a more stringent punishment for manslaughter resulting from acts of arson. To date, however, it has not done so.

*Id.* at 1197 (footnotes omitted). We take these sections of the opinion to mean simply that the legislature may increase penalties for specific aggravated crimes without violating double jeopardy. As Dunlop points out, to interpret these passages as invitations for blanket legislation stating that multiple punishments are acceptable runs counter to the thrust of the rest of the opinion.

For these reasons, we hold that AS 11.41.135 is unconstitutional as applied to Dunlop, *i.e.*, that the trial court's imposition of separate punishments for the two manslaughter counts violated article I, section 9 of the Alaska Constitution.

Dunlop also appeals the trial court's rejection of his proposed mitigating factor, that his conduct was among the least serious within the definition of the offense. AS 12.55.155(d)(9). To the extent that his argument is based in part upon the premise that drunk-driving manslaughter is generally less serious than manslaughter committed by other means, we reject it. *See Walsh v. State*, 677 P.2d 912, 916–17 (Alaska App.1984). In concluding that Dunlop had failed to establish this mitigating factor by clear and convincing evidence, Judge Shortell stated that "Dunlop's behavior prior to the accident, his long drinking bout, his awareness of his condition, his

driving even though his license had been previously suspended for an alcohol-related offense, and the facts and circumstances of the accident do not place this offense in the least serious category of manslaughters." The court's conclusion was supported by the evidence.

In accordance with our decision as to multiple sentences, this case is REMAND-ED for resentencing. At that sentencing, the trial court should impose a five-year sentence on only one of Dunlop's manslaughter convictions.