STATE of Alaska, Petitioner,

v.

James DUNLOP, Respondent,

STATE of Alaska, Petitioner,

v.

Ozzie THOMAS, Respondent.

Nos. S–923, S–1163.

Supreme Court of Alaska.

June 13, 1986.

Robert D. Bacon, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch (S–923), and Harold M. Brown, (S–1163), Attys. Gen., Juneau, for petitioner.

William B. Oberly and James E. Gorton, Jr., Gorton & Oberly, Anchorage, for respondent Dunlop.

Kevin M. Carey, Asst. Public Defender, Kenai, Dana Fabe, Public Defender, Anchorage, for respondent Thomas.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

BURKE, Justice.

This case arises out of two separate criminal actions, *State v. Dunlop* and *State v. Thomas*, consolidated because they raise similar claims under the Alaska Constitution's double jeopardy provision. Alaska Const. art I., § 9.[1] The main issue is

---

1. Art. I, § 9 provides in pertinent part: "No person shall be put in jeopardy twice for the same offense."

whether a defendant can receive multiple sentences for injuring or killing more than one person while driving under the influence of alcohol. The state requests that we overrule or modify our holdings in *Thessen v. State,* 508 P.2d 1192 (Alaska 1973), and *State v. Souter,* 606 P.2d 399 (Alaska 1980), where we held that separate punishments for multiple deaths resulting from a single criminal act are impermissible under the state's double jeopardy clause. We conclude that Alaska's constitutional prohibition against double jeopardy does not bar multiple sentences for multiple victims where one statute has been violated several times.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts in both cases are undisputed. They come to us on petitions for hearing from the Alaska Court of Appeals' decisions in *Dunlop v. State,* 696 P.2d 687 (Alaska App.1985), and *State v. Thomas,* Memorandum Opinion & Judgment, No. 902 (Alaska App. September 4, 1985).

A jury convicted James Dunlop of two counts of manslaughter. AS 11.41.-120(a)(1).[2] He also pled no contest to leaving the scene of an injury accident in violation of AS 28.35.050(a) and AS 28.35.060.[3] *Dunlop,* 696 P.2d at 689. Dunlop left a bar extremely intoxicated. In spite of his intoxication, he drove. He hit two pedestrians at a nearby intersection. *Id.* at 688–89 n. 1. Judge Brian Shortell sentenced Dunlop to consecutive five-year presumptive terms on the manslaughter counts pursu-

ant to AS 11.41.135.[4] *Id.* at 689. Dunlop argued to the court of appeals that AS 11.41.135 and Judge Shortell's ruling violated the Alaska Constitution's double jeopardy provision as interpreted by this court in *Thessen* and *Souter. Id.* at 689–90. The court of appeals held that *Thessen* "compels [the] conclusion that separate sentences may not be imposed under the circumstances" of this case. *Id.* at 688.

Ozzie Thomas pled no contest and was convicted of three counts of third degree assault under AS 11.41.220(a)(2);[5] one count of driving on a revoked driver's license under AS 28.15.291; and violation of conditional release under AS 12.30.060(2). *Thomas,* MO & J No. 902 at 1. Thomas was arrested at the scene of a multiple vehicle collision, which he had started by hitting a pickup truck from the rear. The chain reaction that followed involved the pickup, a school bus, and a passenger car. A number of people were injured. Thomas was intoxicated; his alcohol level was measured at .18 by a blood test. Judge Cranston sentenced Thomas to five years imprisonment with three and one-half years suspended on each assault count, six months imprisonment with five months suspended on the revoked driver's license conviction, and one year imprisonment with all but 150 days suspended for violating a condition of release. The sentences were to be served consecutively. *Id.* at 1–2. Thomas argued to the court of appeals that *Thessen* and *Souter* allowed only one sentence for the three assault counts. The court of appeals agreed and remanded for resentencing. *Id.* at 2. We granted the

---

**2.** AS 11.41.120(a)(1) provides:

(a) A person commits the crime of manslaughter if the person

(1) intentionally, knowingly, or recklessly causes the death of another person under circumstances not amounting to murder in the first or second degree....

**3.** AS 28.35.050(a) and AS 28.35.060 require parties to an accident where injuries or death occur to stop immediately and assist any person injured. Dunlop left the scene of an accident in which two persons were killed.

**4.** AS 11.41.135 provides:

If more than one person dies as a result of a person committing conduct constituting a crime specified in AS 11.41.100–11.41.130, each death constitutes a separately punishable offense.

**5.** AS 11.41.220(a)(2) provides:

(a) A person commits the crime of assault in the third degree if that person recklessly

....

(2) causes physical injury to another person by means of a dangerous instrument.

State's petitions in both cases to resolve this important constitutional issue.

## II. ALASKA'S DOUBLE JEOPARDY PROVISION IS NOT VIOLATED BY MULTIPLE SENTENCES FOR MULTIPLE VIOLATIONS OF A SINGLE STATUTE

### A. *Legislative Intent and Authority*

We must first determine both the legislature's intent in authorizing multiple sentences and whether such an authorization was within its power.[6]

The starting point for statutory analysis is the language of the statutes in question. At issue here are AS 11.41.120,[7] AS 11.41.220,[8] and AS 11.41.135.[9]

In the manslaughter statute, AS 11.41.120, and the criminal assault statute, AS 11.41.220, the legislature expressly sought to punish a person for deaths and assaults caused by reckless behavior.[10] The legislature, therefore, has defined as manslaughter the loss of life which results from a person's conscious disregard of a substantial and unjustifiable risk.

In order to ensure that those who kill more than one person are held responsible for their deeds, the legislature has enacted AS 11.41.135. That statute provides:

> If more than one person dies as a result of a person committing conduct constituting a crime specified in AS 11.41.100–11.41.130, each death constitutes a separately punishable offense.[11]

The legislature explicitly set out the purposes of AS 11.41.135 in commentary accompanying its passage:

> The intent of [AS 11.41.135] is to reverse the outcome in cases similar to *Thessen v. State*, 508 P.2d 1192 (Alaska 1973). In *Thessen* the Alaska Supreme Court held that only one homicide conviction may result when a defendant is convicted of setting a fire that kills 14 people. Under [this section] the defendant could be convicted of 14 counts of homicide—one for each death. Multiple convictions would also result in Manslaughter cases where multiple deaths are caused by a defendant who drives while intoxicated, thus reversing the Alaska Supreme Court's holding in cases similar to the factual

---

**6.** The United States Supreme Court has repeatedly stated that "the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiplied cannot be resolved without determining what punishments the Legislative Branch has authorized;" *Whalen v. United States*, 445 U.S. 684, 686–89, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715, 721 (1980); *Jeffers v. United States*, 432 U.S. 137, 154–55, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 168, 182–83 (1977) ("critical inquiry [in determining violation of double jeopardy] is whether Congress intended to punish each statutory violation separately"); *Bell v. United States*, 349 U.S. 81, 82, 75 S.Ct. 620, 622, 99 L.Ed. 905, 910 (1955) ("[t]he punishment appropriate for the diverse federal offenses is a matter for the discretion of Congress, subject only to constitutional limitations, more particularly the Eighth Amendment"). Other jurisdictions concur. *See State v. Miranda*, 3 Ariz.App. 550, 416 P.2d 444, 451 (1966); *State v. Myers*, 96 Wis.2d 48, 298 S.E.2d 813, 816 (W.Va.1982); *State v. Rabe*, 291 N.W.2d 809, 819 (1980).

**7.** *See supra* note 2.

**8.** AS 11.41.220 states in pertinent part:
(a) A person commits the crime of assault in the third degree if that person recklessly

(1) places another person in fear of imminent serious physical injury by means of a dangerous instrument; or
(2) causes physical injury to another person by means of a dangerous instrument.

**9.** *See supra* note 4.

**10.** "Recklessly" is defined by AS 11.81.900(a)(3):
*a person acts recklessly* with respect to a result or to a circumstance described by a provision of law defining an offense *when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists;* the risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation; a person who is unaware of a risk of which the person would have been aware had that person not been intoxicated acts recklessly with respect to that risk.
(Emphasis added).

**11.** AS 11.41.100–11.41.130 includes, *inter alia,* first degree murder, second degree murder, manslaughter, and criminally negligent homicide.

situation in *State v. Souter*, 606 P.2d 399 (Alaska 1980).

3 1982 *House Journal, Supp. No. 63*, 2 (June 1, 1982).[12]

■ In *Thessen* we held that "where there has been but one statute violated by a single act, without intent to harm multiple victims, the Alaskan constitutional prohibition against placing a person in jeopardy twice for the same offense prevents imposition of multiple punishments." 508 P.2d at 1195. This broad language potentially applies to the violation of any single statute where there are multiple victims. On its face AS 11.41.135 does not directly authorize multiple punishments for multiple victims of reckless assaults. It does, however, imply such intent. We do not believe that the legislature sought to single out homicide defendants for special treatment. At the time AS 11.41.135 was enacted only homicide cases had been decided. *See* 3 1982 House Journal, Supp. No. 63 at 2. It would be inconsistent to hold that where deaths occur multiple punishments are possible but where only injuries or a combination of deaths and injuries occur, a court would be required to only punish once for multiple assaults. We do not believe the legislature intended such an anomaly.

By defining manslaughter and third degree assault to include responsibility for reckless behavior and defining "recklessness" to include the risk that a result will occur, the legislature sought to hold people criminally responsible for the *results* of their behavior that are within the scope of the risk created by that behavior.[13] Our decisions and those of other courts uniformly recognize the inherent authority of the legislative branch to define and punish crimes absent constitutional violations.[14]

### B. Constitutional Analysis of Double Jeopardy

■ Absent proof of a constitutional violation we will uphold a legislative imposition of punishment. We must, therefore, ascertain whether the legislature's actions are constitutionally permissible.

In *Whitton v. State*, 479 P.2d 302 (Alaska 1970), we were required to define "same offense" for purposes of Alaska's double jeopardy clause.[15] There a jury convicted the defendant of robbery and of using a firearm during the commission of that robbery. The defendant was sentenced for both counts and argued on appeal that he was placed in jeopardy twice for the same offense. We considered a number of tests formulated by other jurisdictions for defining the "same offense" and ultimately rejected them all.[16] 479 P.2d at 308–12. We found that all the tests failed to determine when separate statutory violations consti-

---

**12.** Since *Thessen* was decided on constitutional grounds, 508 P.2d at 1197, the legislature could not by itself reverse the decision. AS 11.41.135 and its accompanying commentary does clarify the legislature's position on multiple punishments for multiple victims.

**13.** The results of an act are always considered in defining an offense. Alaska has adopted the Model Penal Code's three-fold division of elements of an offense. *Neitzel v. State*, 655 P.2d 325, 328–30 (Alaska App.1982); *see* 2 1978 Senate Journal, Supplement No. 47, at 140 (June 12, 1978). An *offense* includes the *nature* of the conduct, the *circumstances* surrounding the conduct and the *results* of the conduct.

**14.** *Thessen v. State*, 508 P.2d 1192, 1197 (Alaska 1973) ("[w]ithin constitutional limits, the Legislature has the power to impose whatever punishments it deems appropriate for specific crimes" (footnote omitted)); *Whitton v. State*, 479 P.2d 302, 304 (Alaska 1970) ("[i]t is within the traditional scope of legislative power to de-

ter anti-social behavior by enacting laws proscribing, under the pain of punishment certain courses of human conduct considered to be detrimental to an ordered society"); *State v. Bly*, 621 P.2d 279, 280 (Ariz. 1980) ("[p]ower resides with the legislature to define that conduct which will not be tolerated in an ordered society and to provide punishment for those who violate public policy"); *People v. Childs*, 199 Colo. 436, 610 P.2d 101, 103 (1980) (" 'It is fundamental that the legislature has the inherent authority to define crimes and to prescribe punishment for criminal violations' ") (quoting *People v. Arellano*, 185 Colo. 280, 524 P.2d 305 (1974)); *see* 22 C.J.S. *Criminal Law* §§ 11–13 (1961).

**15.** *See supra* note 1.

**16.** The tests we considered included *inter alia:*
(1) *Same Evidence* test: this test as applied by the federal courts was first announced in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309, (1932). The

tute the same offense. *Id.* at 312. Our test, ultimately, focused on the quality of any differences between the statutory violations and how those differences relate to the basic societal interests protected by the statutes. *Id.*

We described the application of the standard:

The trial judge first would compare the different statutes in question, as they apply to the facts of the case, to determine whether there were involved differences in intent or conduct. He would then judge any such differences he found in light of the basic interests of society to be vindicated or protected, and decide whether those differences were substantial or significant enough to warrant multiple punishments. The social interests to be considered would include the nature of personal, property or other rights sought to be protected, and the broad objectives of criminal law such as punishment of the criminal for his crime, rehabilitation of the criminal, and the prevention of future crimes.

*Id.* If differences in intent or conduct exist as to the different statutes, and if those differences are significant or substantial in relation to the social interest involved, multiple sentences may be imposed and double jeopardy principles are not violated. *Id.* We concluded that robbery and use of a firearm were the same offense under this test and hence only one sentence could be imposed. *Id.* at 314.[17]

Three years later we were presented with a very different double jeopardy issue in *Thessen v. State*, 508 P.2d 1192 (Alaska 1973). There a jury convicted the defendant of fourteen counts of manslaughter for setting fire to a hotel which killed fourteen occupants.[18] Thessen received three consecutive twenty-year sentences and eleven concurrent twenty-year terms. *Id.* at 1193. Thessen appealed the validity of the sentences.

Relying on *Whitton*, we focused on the *intent* of the defendant and held that only one sentence was permissible under the Alaska double jeopardy clause. *Thessen*, 508 P.2d at 1197. The majority[19] looked first to *Whitton* for guidance in defining "single offense." *Id.* at 1194. Since Thessen violated only one statute, albeit fourteen times, the majority compared one count with another (rather than one statute with another) and applied the *Whitton* test.

The sole difference between each count was the name of the victim involved. Thessen's intent and conduct were identical as to each count. Since there is an absence of any difference in intent and conduct, we do not reach the other considerations set forth in *Whitton*—the judging of the differences "in light of the basic interests of society to be vindicated or protected." The *Whitton* test for ascertainment of double jeopardy when applied to the multiple counts charged against Thessen dictates the conclusion that but one offense was committed.

*Id.* at 1195 (footnotes omitted).

■ After much thought, we conclude that in *Thessen* we erred in applying *Whit-*

United States Supreme Court held that violations of different statutes arising out of a single event constituted a "single offense" unless one requires "proof of an additional fact which the other does not." *Id.*

(2) *Same Transaction* test: a "single offense" exists if a number of separate statutory violations arise out of a single criminal act or transaction. *Whitton*, 479 P.2d at 307.

(3) *Rule of Lenity:* Federal courts apply this rule where Congressional intent to impose multiple punishment is unclear. The rule resolves doubts of intent against the government. "[L]egislative silence will be construed in favor of lenity." *Id.*

17. The state accepts the *Whitton* test as an appropriate standard for a "single offense." We

do not disturb our holding in *Whitton* here. *Whitton* does not apply to these factual situations.

18. Alaska's "felony-murder" rule at the time *Thessen* was decided required an "intent to kill." *Gray v. State*, 463 P.2d 897, 904 (Alaska 1970). AS 11.41.110(a)(3), the current "felony-murder" rule, was adopted after *Thessen*. It provides, *inter alia*, for second degree murder for deaths resulting from committing or attempting to commit arson.

19. Only three justices participated in *Thessen* and the court divided two to one.

*ton* to multiple violations of a single statute. The *Thessen* reasoning is flawed. By focusing on the intent of the accused, *Thessen* ignores the gravamen of the offense of manslaughter and, by analogy, assault. The statute prohibits causing the death of another person. AS 11.41.120(a)(1).[20] When several deaths or injuries [21] occur in the course of a single incident, the *offense* prohibited by the statute has been violated several times over. The identity of the victim represents different conduct—it represents conduct directed at that victim.

Instead of focusing on the accused's intent we must look at the consequences. Where an act of violence injures multiple victims, there are as many punishable *offenses* as there are victims. We look first at the offense prohibited by the statute. In cases of manslaughter or assault, the conduct prohibited is the killing or injuring of a *person*. Where more than one person is victimized, more than one offense occurs. Where multiple offenses occur, the double

jeopardy provision does not apply. We consider the intent of the offender only when determining the appropriate crime to charge. Dunlop was convicted of manslaughter because he had no intent to kill but recklessly caused deaths; Thomas was convicted of third degree assault because he had no intent to harm his victims but recklessly injured them.

Virtually every other state which has considered this issue has held that multiple punishments for multiple victims of single criminal acts do not violate state or federal double jeopardy provisions.[22]

In 1980 the Supreme Court of Tennessee overruled its prior decisions barring multiple convictions where more than one death results from a single automobile accident. *State v. Irvin*, 603 S.W.2d 121 (Tenn. 1980). The Tennessee court "concluded that the majority view is more sound from the standpoint both of logic and of analysis." *Id.* It indicated that its "[l]ater cases re-

---

**20.** We recognize that AS 01.10.050 allows singulars to be treated as plurals. However, in this area each killing is a separate homicide. This has always applied in the area of intentional homicide.

**21.** An assault occurs when someone "causes physical injury to another person...." AS 11.41.220. *See supra* note 5.

**22.** *State v. Miranda,* 3 Ariz.App. 550, 416 P.2d 444, 451 (1966) (consecutive sentences permissible for three manslaughter convictions arising from unlawful driving; "[p]ertinent authority establishes that it is the intent of the legislature which controls and that there is no constitutional prohibition against legislation which provides for multiple crimes arising from single acts against multiple victims"); *Wilkoff v. Superior Court,* 38 Cal.3d 345, 211 Cal.Rptr. 742, 745, 696 P.2d 134, 137 (1985) ("The actus reus of vehicular manslaughter is ... the unlawful kill-mits several homicides in the course of a single driving incident, he or she has committed the act prohibited by the statute several times." (footnote omitted)); *State v. Whitely,* 382 S.W.2d 665, 667 (Mo. 1964) (consecutive sentences for multiple victims permissible after separate manslaughter prosecutions arising from one act; the "gravamen of the offense [manslaughter] is the killing of a human being.... '[I]n a plea of former jeopardy ... it is not sufficient to show that the act is the same, but it must be shown that the offense also is the

same in law and fact.'") (quoting Annot., 172 A.L.R. 1053 (1948)); *State v. James,* 631 P.2d 854, 855-56 (Utah 1981) (multiple counts of kidnapping arising out of single incident not barred by double jeopardy; "A fundamental purpose of the criminal law is to protect individual citizens from criminal conduct of another. (Citations omitted). In crimes against the person (as contrasted with crimes against property), a single criminal act or episode may constitute as many offenses as there are victims.... Double jeopardy therefore does not prevent multiple convictions for multiple offenses arising from a single criminal episode. Likewise, offenses committed against multiple victims are not the same for double jeopardy purposes even though they may arise from the same criminal episode."); *State v. Myers,* 298 S.E.2d 813, 815 (W.Va.1982) (multiple sentences permissible under double jeopardy clause, case explicitly overrules past holdings; "[We] are following the majority view that multiple deaths resulting from a single negligent operation of a motor vehicle may be charged and punished as separate offenses." The court also said: "Cases in a majority of jurisdictions also reason that consecutive punishments are justifiable because the gravamen of the offense is the damage it does, not the recklessness it implies."); *see also* 7A Am.Jur.2d *Automobiles and Highway Traffic* § 391 (1980) ("Most courts hold that there are as many separate and distinct offenses as there are persons injured or killed by the unlawful operation of a motor vehicle....").

lied upon a fictional concept of a single criminal intent." *Id.* at 121–22. The case involved an intoxicated defendant who crossed the center line of a highway, hit an oncoming car, and killed the four people in that car and the passenger in his own car. A jury convicted the defendant of four counts of second degree murder and one of manslaughter. *Id.* at 122. He was separately sentenced for each count, with the sentences to run concurrently. *Id.*

After discussing prior Tennessee law the court concluded that

> the foregoing analysis [criminal intent is the imputed disregard of the safety of *all* persons who might be injured by a drunk driver] improperly focuses upon the fictional "intent" of the accused rather than upon the elements of the criminal offense with which he is charged.... In our opinion, when more than one person is killed, there is more than one homicide—regardless of any fictional "intent" or whether the deaths result from a single "act" or a series of acts. It seems illogical to us, as a general proposition, to hold that when two persons have been killed by an accused, he has committed only one homicide.

*Id.* at 123. The court explicitly stated that it was not adopting multiple *consecutive* sentences in every case. *Id.* It noted that the sentencing court must consider the appropriate sentence in light of the circumstances surrounding the offense. *Id.*

■ Dunlop and Thomas argue that imposing multiple punishments for more than one count would not be based on their culpability. Implicit in their argument is the lack of foreseeable harm to multiple victims. The Wisconsin Supreme Court also recently rejected arguments similar to those of Dunlop and Thomas. That court found specious the argument that holding the defendant responsible for more than one killing would unjustly base the verdict on the fortuitous event that he happened to hit a car with multiple occupants. *State v. Rabe*, 96 Wis.2d 48, 291 N.W.2d 809, 822 (1980) (four people killed by defendant while driving intoxicated). The court stated: "It is

foreseeable that intoxicated use of a motor vehicle poses a substantial risk of causing multiple deaths." *Id.* 291 N.W.2d at 822.

The District of Columbia Court of Appeals has cogently presented the fallacy in defendants' argument:

> That appellant's conduct would have resulted in the tragedy which occurred was not fortuitous but, unhappily, was almost inevitable. The combination of an undue ingestion of alcohol and the resultant mishandling of automobiles causes awesome carnage on our highways daily. In fairness it can be said that appellant could hardly have chosen a means which would have been more likely to result in injury to many persons.

*Murray v. United States*, 358 A.2d 314, 321–22 (D.C.1976); *see also State v. Myers*, 298 S.E.2d 813, 815 (W.Va.1982). We agree.

■ We do not lightly overrule our past decisions.[23] In *Souter* we recognized that it is a "salutory policy to follow past decisions." 606 P.2d at 400 (citation omitted). We still agree. However, where we are "clearly convinced the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent," we will so depart. *Id.* (quoting 1B J. Moore, Federal Practice and Procedure ¶ 0.402 at 154–55 (1974) (other citations omitted)). We now recognize that *Thessen* was erroneously decided. Alaska's constitutional double jeopardy provision is not offended by such multiple punishments. The increased deterrence resulting from multiple punishments of drunk drivers will compliment the other measures undertaken to reduce the number of deaths on our highways.

We, therefore, overrule *Thessen*. The sentence in *Dunlop* is AFFIRMED. In *Thomas*, we AFFIRM the trial court's ruling on the *Thessen* issue, and REMAND to the court of appeals for consideration of the other points raised in Thomas' appeal.

---

**23.** In addition to overruling our decisions in *Thessen* and *Souter,* today's decision also over-

rules *State v. Gibson,* 543 P.2d 406 (Alaska 1975), to the extent it affirmed *Thessen.*