Valerio Ernest MIRANDA,
Petitioner–Appellant,

v.

Thomas COOPER, Superintendent,
Respondent–Appellee,

and

Frank Gunter, (Gunther) sic, Director,
D.O.C., Respondent.

No. 91–1080.

United States Court of Appeals,
Tenth Circuit.

June 17, 1992.

Vicki Mandell–King, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, Colo., for petitioner-appellant.

John Daniel Dailey, Deputy Atty. Gen. (Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., with him on the brief), for respondent-appellee and respondent.

Before SEYMOUR and BARRETT, Circuit Judges, and HUNTER *, District Judge.

BARRETT, Senior Circuit Judge.

Valerio Ernest Miranda (Miranda), a Colorado state prisoner, appeals from the district court's order adopting the recommendations of the United States magistrate judge in denying his petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

## Background

Miranda was convicted following trial by jury in the District Court of Larimer County, Colorado, and sentenced on January 17, 1986, to eight years imprisonment on a conspiracy to distribute cocaine count, sixteen years imprisonment on a distribution of cocaine count, and sixteen years imprisonment on a possession of cocaine count. The latter two sentences were to be served consecutively.

The case involves a series of undercover drug transactions wherein the government relied principally on the undercover services of one William R. Hannah (Hannah), a confidential informant. Several drug transactions between Hannah and one Ernest Benavidez (Benavidez) led the police to suspect Miranda's involvement. In time, the officers obtained a search warrant for Miranda's home and a warrant for his arrest. During a scheduled "buy" between Hannah and Benavidez, Miranda was arrested and his truck was seized pursuant to another search warrant. At trial, Miranda sought to suppress the evidence seized pursuant to the search warrants.

Miranda appealed his conviction to the Colorado Court of Appeals, contending that the evidence obtained through illegal searches and seizures was unlawfully admitted into evidence. He further contend-

* The Honorable Elmo B. Hunter, Senior Judge, United States District Court for the Western District of Missouri, sitting by designation.

ed that: the trial court erred in limiting the evidence he offered concerning his theory that Hannah, the informant, supplied the cocaine; the court erred in imposing consecutive sentences for the possession count and the distribution count; the sentences imposed were unlawful and excessive; the court improperly restricted the defense from cross-examination of Hannah, the prosecution's primary witness.

The Colorado Court of Appeals, in affirming Miranda's judgment and sentences, addressed the search and seizure issues, just as did the parties, on both federal and state law grounds. (R., Vol. I, Tab 9, Exhibit D, pp. 2–4). In its discussion of the claims of error in the imposition of the two consecutive sixteen year sentences on the possession and distribution convictions, the court rejected the urged adoption of the Alaska "simple transaction" test, ruling that Section 18–1–408 C.R.S. (1986 Repl. Vol. 8B) requires concurrent sentences only if the counts of which the accused was convicted are supported by identical evidence. Conversely, the court cited to *People v. Montgomery*, 669 P.2d 1387 (Colo. 1983) for the rule that if the charges of which the defendant is convicted are not supported by identical evidence, it is within the discretion of the trial court to impose either consecutive or concurrent sentences. No United States constitutional provisions, federal statutes or decisions were relied upon. *Id.* pp. 5–6. With respect to Miranda's contention that the length of his total sentence was excessive, again the court concluded, based exclusively on Colorado law, that the record revealed circumstances justifying the sentence in the extended range and, thus, no abuse of discretion by the trial court had been demonstrated. *Id.* pp. 6–7. Again, no federal law was relied upon by the parties or the court. Miranda's petition for rehearing was denied and the Colorado Supreme Court denied his petition for a writ of certiorari.

In Miranda's federal habeas corpus petition, he asserted three grounds: (1) that the searches of his home and vehicle were illegal and in violation of his rights under the Fourth Amendment to the United States Constitution, (2) that the consecutive sentences imposed were illegal in that both the possession and distribution charges arose out of the same transaction, in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and (3) that the defense was improperly restricted from cross-examination of the primary prosecution witness in violation of the Fifth and Fourteenth Amendments to the United States Constitution. (R., Vol. I, Tab 3, pp. 5–6C–1). Miranda impliedly represented that his challenge to the legality, under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, of the consecutive sentences imposed upon him, had been previously presented in state court because he did not complete question 13 which asked "If any of the grounds listed in 12A, B, C and D were not previously presented in any other court, state or federal, state briefly what grounds were not so presented, and give reasons for not presenting them." *Id.* at p. 6.

The respondents answered, alleging that (1) Miranda was advancing in his federal habeas corpus action "[t]he same claims he did in the Colorado Court of Appeals, except now he claims that the consecutive nature and aggregate length of his sentences, violate the Eighth and Fourteenth Amendments' proscription against cruel and unusual punishment," (2) Miranda failed to present his sentencing claims "[i]n a manner which would have alerted the state courts to a cruel and unusual punishment claim ... [which] either subjects the petition to dismissal for failure to exhaust state remedies ... or, bars consideration of the cruel and unusual punishment claim because it cannot be raised now in any proceeding ..." (procedural default doctrine), (3) Miranda was precluded from raising his Fourth Amendment search and seizure claims since he was accorded a full and fair opportunity to, and did, litigate them in state court, and (4) Miranda was not denied his right of cross-examination in violation of the Confrontation Clause. *Id.*, Tab 9, pp. 2–3.

Based upon the Petition for Writ of Habeas Corpus, the Answer to Show Cause, the complete state trial record and briefs,

the United States magistrate judge submitted his Recommendations to the district court. *Id.*, Tab 16.

The magistrate judge, in submitting his Recommendations, did not address that portion of the Respondents' Answer alleging that Miranda had failed to exhaust his state remedies or, in the alternative, that he was procedurally barred from now presenting his cruel and unusual punishment claims. Miranda had never presented to the state courts his contention that the consecutive nature and aggregate length of his sentences violated the Fifth, Eighth and Fourteenth Amendments. However, the magistrate judge reached the merits of this issue, finding/concluding that the imposition of the two sixteen year sentences, to be served consecutively, was not excessive in violation of the Eighth Amendment's prohibition against cruel and unusual punishment as contended by Miranda in Ground Two because (a) the sentences are within the range of years authorized by the Colorado legislature, and thus non-reviewable, (b) the Eighth Amendment does not focus on the cumulative sentence but on the sentence imposed for each specific crime, and (c) the crimes charged did not involve one continuous transaction as asserted by Miranda, constituting but one offense for which only one sentence could be imposed, but, and rather, two separate transactions resulting in two separate crimes.

Based thereon, the magistrate judge concluded that he was in agreement with the Colorado Court of Appeals and he found no violation of Miranda's Constitutional rights. He recommended that Ground 2 be dismissed. *Id.* pp. 4–5. In the body of his § 2254 petition, as Ground Two, Miranda claimed that the imposition of the consecutive sentences violated the Eighth and Fourteenth Amendments to the United States Constitution. It was not until the last line of his attached Appendage 2 that he asserted the Fifth Amendment. (R., Vol. I, Tab 3). This accounts for the fact that the respondents, the United States magistrate judge and the district court addressed Miranda's Ground Two contention solely on Eighth Amendment law. The

magistrate judge rejected Miranda's contention that certain evidence obtained through search warrants was obtained by unlawful means and should have been excluded. The magistrate judge concluded that, in accordance with *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the State of Colorado had provided Miranda an opportunity for full and fair litigation of these Fourth Amendment claims, and Miranda may not raise the issue of exclusion of evidence in a petition for federal writ of habeas corpus. The magistrate judge thus recommended dismissal of Ground One. (R., Vol. I, Tab 16, p. 3). The magistrate judge also recommended that Miranda's Third Ground, wherein he asserted that the trial court improperly limited his right to cross-examination of the prosecution's chief witness, Hannah, in violation of Miranda's confrontation rights, be dismissed with prejudice. *Id.* at pp. 5–6.

Miranda filed written objections to the magistrate judge's recommendations. *Id.*, Tab 23. Thereafter, the matter came on for review by the district court pursuant to the provisions of 28 U.S.C. § 636(b)(1).

The district court, based on its review of the complete court file, the transcript of all proceedings before the State trial court and the opinion of the Court of Appeals of the State of Colorado, accepted and adopted the Recommendations of the magistrate judge for dismissal. (R., Vol. I, Tab 28). The district court found/concluded:

I find that the plaintiff had a full and fair hearing in the state trial court on his claim of illegal search and seizure. The affidavit of the police officer, together with corroborating evidence obtained from an informant clearly show probable cause of the issuance of arrest and search warrants and for use of the evidence obtained thereby. *Stone v. Powell*, 428 U.S. 465 [96 S.Ct. 3037, 49 L.Ed.2d 1067] (1975).

Petitioner's contention is that the sentence imposed by the state trial court was illegal because the crimes of which he was convicted involved only one continuous transaction, and, therefore there

should have been only one sentence imposed. The Colorado Court of Appeals, in affirming the verdict of guilty on each count, found that the offenses charged, i.e., distribution of cocaine, possession of cocaine and conspiracy, are separate offenses. Petitioner's sentence was 16 years on each of the first two counts, to run consecutively, and eight years on the third (conspiracy) count to run concurrently. The cocaine sold to Hannah was the basis for the distribution charge, and cocaine found in petitioner's residence during the execution of the search warrant formed the basis of the possession charge. The two charges were proven by different evidence. I agree.

As to the claim relating to the trial court's limiting cross-examination of state's witnesses, the trial record clearly reveals that many of the questions by petitioner's counsel were irrelevant and cumulative. It is well settled that the limits of cross-examination are within the discretion of the trial court. *Delaware v. Van Arsdall*, 475 U.S. 673 [106 S.Ct. 1431, 89 L.Ed.2d 674] (1986) and *United States v. Atwell*, 766 F.2d 416 (10th Cir. 1985).

*Id.* at p. 2.

### I.

Before addressing Miranda's appellate contentions, we must determine whether this court should dismiss Miranda's petition for writ of habeas corpus because he has failed to demonstrate that he has exhausted available state remedies.

Miranda asserted in his federal habeas petition that the sentences imposed by the state district court were improper and illegal in that the two consecutive sixteen year sentences, one for possession of cocaine and one for distribution of cocaine, amounted to cruel and unusual punishment (no longer asserted on appeal) and that the possession and distribution charges arose from one transaction and should not have been treated as separate offenses, in violation of Miranda's rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. *See*, Vol. I,

Tab 3 B, Appendage 2. The petitioner there alleged/asserted:

Colorado statutes require concurrent sentences when multiple counts were tried and supported by identical evidence. The evidence presented in this case was identical as it arose out of the operation conducted by the Ft. Collins police department and was based on the search warrants obtained by the police. The only exception to the Colorado statute is when there are multiple victims; in this case the only victim was the buyer and that is dubious.

During the trial it was patently shown that the transaction involved two acts happening simultaneously, and that they were geared toward the same objective. The defendant was alleged to have delivered cocaine from his home to Benavidez. The defendant was convicted both of possessing and distributing cocaine, but the cocaine he possessed was alleged to be the source of the cocaine he distributed, i.e., one continuous transaction. Common sense dictates that the defendant could not have distributed cocaine if he did not first possess it. Since the cocaine found in the house was the source of the cocaine the defendant allegedly distributed, the situation is no different than if the defendant had been convicted both for possessing and distributing cocaine found on his person.

The defendant in this case should have received concurrent sentences, as nowhere in the trial was it shown that the crimes charged and tried were separate and distinct; in fact, it is patently clear that they were of the same criminal transaction. To allow the consecutive sentences to stand would be a blatant violation of the defendant's rights under the 5th, 8th and 14th Amendments to the U.S. Constitution.

*Id.*

Miranda's appeal from his state district court conviction to the Colorado Court of Appeals challenged his sentences as excessive. He urged the court to adopt the so-called "Alaska test" and certain Colorado decisions in holding that the acts charged constituted a single act of criminal conduct

rather than "multiple criminal conduct involving separate criminal acts." *Id.*, Tab 9, Reply Brief, pp. 12–13. No contentions were made by Miranda that the sentences imposed violated any federal constitutional provisions.

The Colorado Court of Appeals, in affirming the judgment and sentences, observed:

> The cocaine sold to Hannah was the basis for the distribution charge, while the substances containing cocaine of different purity found in defendant's residence during the execution of the search warrant formed the basis for the possession charge. Thus, the cocaine distributed was separate from the cocaine possessed and the two charges were proven by different evidence.

*Id.*, Tab 9, Exhibit D, Opinion of the Colorado Court of Appeals.

Significantly, Miranda raised no federal constitutional contentions on his appeal. Instead, he urged the court to adopt the so-called "Alaska test." Thus, no allegations were made of federal constitutional violations and none were addressed or decided.

Miranda's Opening Brief filed in the Colorado Court of Appeals challenging, *inter alia*, the consecutive sentences for the possession and distribution convictions, relied exclusively on *ABA Standards for Criminal Justice*, Colorado Supreme Court decisions; the "single transaction" test applicable in Alaska announced in *Thessen v. State*, 508 P.2d 1192 (Alaska 1973) [*overruled by State v. Dunlop*, 721 P.2d 604 (Alaska 1986) ]; and footnote references to articles critical of the "same evidence" test. Not a single federal decision was cited. (R., Vol. I, Tab 9, Exhibit A, pp. 23–30). The government's Answer Brief contended, relying exclusively on Colorado law, that because the counts of distribution and possession of cocaine were based on different, rather than identical evidence, the sentences lawfully ran consecutively to each other and the trial court did not abuse its discretion in so sentencing. (*Id.*, Exhibit B, Part III, pp. 22–25). In his Reply Brief, Miranda again relied exclusively on state decisions, urging the court to adopt the

Alaska "single transaction" test. *Id.*, Reply Brief, pp. 12–13.

There is nothing in this record demonstrating that Miranda sought post-conviction relief under Rule 35 of the Colorado Rules of Criminal Procedure which provides, *inter alia*, that even though a conviction was affirmed on appeal, the person convicted may, as a matter of right, apply for post-conviction review on the grounds that the conviction was obtained or sentence imposed in violation of the Constitution or laws of the United States.

▪ Miranda, on this appeal, acknowledges that before a state prisoner may raise a federal constitutional claim attacking his state conviction in a federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254, he must have first exhausted state remedies and he must have provided the state with a fair opportunity to apply controlling legal principles to facts bearing upon his constitutional claims. (Appellant's Opening Brief, p. 28). Miranda cites to *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) for the rule that it is not enough that all facts necessary to support the claim were before the state courts or that a somewhat similar claim was made. He submits that because he cited Colorado cases and one Alaska case bearing upon the double jeopardy claim, it was not necessary that he explicitly characterize the claim. *Id.* at pp. 28–9. We disagree and hold that Miranda failed to fairly present this federal constitutional claim in the courts of the State of Colorado.

In his brief on this appeal, Miranda advises that although he claimed, in his *pro se* habeas petition below, that his sentence violated due process and the Eighth Amendment, counsel for Miranda was no longer pursuing the Eighth Amendment claim. *Id.*, p. 29, n. 3. Having thus said, Miranda's brief proceeds to address the lawfulness of his sentences under the due process clause of the Fourteenth Amendment and the double jeopardy clause of the Fifth Amendment and federal court decisions interpretive thereof. *Id.* at pp. 30–34. A review of the litigation background readily demonstrates that Miranda never

presented *any* federal constitutional contentions involving the application of the Fifth, Eighth or Fourteenth Amendments to the United States Constitution to the courts of the State of Colorado. There are no references or cites to any federal constitutional amendments, federal decisions or laws. Furthermore, none of Miranda's double jeopardy contentions anchored to the Fifth Amendment and federal decisions interpretive thereof were presented to, addressed or relied upon by the magistrate judge or the district court.

In *Clonce v. Presley*, 640 F.2d 271, 273 (10th Cir.1981), we held that a state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted available state remedies, citing to 28 U.S.C. § 2254(b) and (c), and *Bond v. Oklahoma*, 546 F.2d 1369, 1377 (10th Cir. 1976). Clearly, Miranda has not carried that burden in this case. It will be recalled that Miranda did not complete question 13 in his Petition for Writ of Habeas Corpus designed to explain why grounds asserted in the Petition had not been previously presented in state courts. (R., Vol. I, Tab 3, p. 6). In light of the non-exhaustion and/or procedural default defenses raised in Respondents' Answer, *id.*, Tab 9, pp. 2–3, we do not know why, as a threshold matter, these issues were not addressed by the magistrate judge or the district court.

In *Lewis v. New Mexico*, 423 F.2d 1048 (10th Cir.1970), we held that we will not excuse a failure to exhaust state remedies in a 28 U.S.C. § 2254 action unless it is affirmatively shown that resort to them would be useless. Such demonstration has not been made in this record. We have previously observed that nothing in this record demonstrates that Miranda sought post-conviction relief in the courts of the State of Colorado pursuant to Rule 35 of the Colorado Rules of Criminal Procedure. *See also Smith v. Gaffney*, 462 F.2d 663, 665 (10th Cir.1972) (affirmative showing required).

*Smith v. Digmon*, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978) and *Picard v. Conner*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) hold that the burden is on the state prisoner bringing a § 2254 action to raise all federal constitutional claims in state trial court and if that court rules against the petitioner, he must present the same claim on appeal. Such satisfies the exhaustion of state remedies doctrine. In support of his contention that he did present his federal constitutional claim (now, on appeal, anchored to the Fifth Amendment, whereas in the federal district court Miranda relied on the Eighth Amendment) to the Colorado Court of Appeals, Miranda relies upon his citation to several cases "which bear on the double jeopardy claim. *See Maynes v. People*, [169 Colo. 186] 454 P.2d 797, 800 (1969), *citing Prince v. United States*, 352 U.S. 322 [77 S.Ct. 403, 1 L.Ed.2d 370] (1957), and *Thessen v. State*, 508 P.2d 1192, 1197 n. 22 (Alaska 1973)." (Appellant's Opening Brief, p. 29).

■ This argument misses the mark. In order to satisfy the exhaustion requirement, a federal habeas corpus petitioner must show that a state appellate court has had the opportunity to rule on the same claim presented in federal court, see *Smith v. Atkins*, 678 F.2d 883, 884–85 (10th Cir. 1982) (per curiam), or that at the time he filed his federal petition, he had no available state avenue of redress. See *Anderson*, 459 U.S. at 8, 103 S.Ct. at 278. The rationale for this requirement is that state courts will enforce the federal constitution as fully and fairly as a federal court. See *Duckworth v. Serrano*, 454 U.S. 1, 3–4, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam); *White v. Meachum*, 838 F.2d 1137 (10th Cir.1988).

*Picard* requires that a federal constitutional claim must be clearly presented to the state courts:

> ... To be sure, respondent presented all the facts. Yet the constitutional claim the Court of Appeals found inherent in those facts was never brought to the attention of the state courts. The Supreme Judicial Court dealt with the arguments respondent offered; we cannot fault that court for failing also to consider *sua sponte* whether the indictment procedure denied respondent equal pro-

tection of the laws ... we do not imply that respondent could have raised the equal protection claim only be citing "book and verse" on the federal constitution.... We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts. A claim that an indictment is invalid is not the substantial equivalent of a claim that it results in unconstitutional discrimination.

404 U.S. at 277–78, 92 S.Ct. at 513.

Here the record is clear that Miranda did not present in the courts of the State of Colorado his claim that the consecutive sentences imposed for distribution and possession with intent to distribute violated his due process rights and the double jeopardy clause of the Fifth and Fourteenth Amendments to the United States Constitution. Thus, we conclude that Miranda failed to exhaust all available state remedies as to his sentencing claims.

In *Coleman v. Thompson,* — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court observed:

> This Court has long held that a state prisoner's federal habeas petition should be dismissed if the petitioner has not exhausted available state remedies as to any of his federal claims. *See Ex Parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). See also, *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Castille v. Peoples,* 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); 28 U.S.C. § 2254(b) (codifying the rule). This exhaustion rule is also grounded in principles of comity; in a federal system, the states should have the first opportunity to address and correct alleged violations of state prisoner's federal rights. As we explained in *Rose, supra:*
>
> > "The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. See *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 490–491 [93 S.Ct. 1123, 1127–28, 35 L.Ed.2d 443] (1973). Under our

federal system, the federal and state 'courts [are] equally bound to guard and protect rights secured by the Constitution.' *Ex Parte Royall,* 117 U.S. at 251 [6 S.Ct. at 740]. Because 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' federal courts apply the doctrine of comity, which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.' *Darr v. Burford,* 339 U.S. 200, 204 [70 S.Ct. 587, 590 94 L.Ed. 761] (1950)." *Id.* 455 U.S. at 518, 102 S.Ct. at 1203.

*Id.* 111 S.Ct. at 2554–55.

*Coleman* held that the state's dismissal order being there reviewed "fairly appears" to rest primarily on state law since there was no mention of federal law. The same is true in the instant case. Accordingly, the dismissal in *Coleman* was held to be independent of federal law and rendered on an independent state procedural ground. The petitioner's final resort to federal habeas review under those circumstances required his demonstration of cause for his default and actual prejudice as a result of the alleged violation of federal law or demonstration that the failure to consider the claims would result in a fundamental miscarriage of justice. *Id.* at 2551.

*Coleman* places the same emphasis on a state's procedural default rule as it does a state prisoner's failure to exhaust state remedies on substantive constitutional grounds:

> These same concerns [under our federal system, the states should have the first opportunity to address and correct alleged violations of state prisoner's federal rights] apply to federal claims that have been procedurally defaulted in state court ... there are no state remedies any longer "available" to him. See 28 U.S.C. § 2254(b); *Engle v. Isaac,* 456 U.S. 107,

125–25, n. 28, 102 S.Ct. 1558, 1570, n. 28, 71 L.Ed.2d 783 (1982). In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that States' interests in correcting their own mistakes is respected in all federal habeas cases.

*Id.* 111 S.Ct. at 2555.

■ In *Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), the Supreme Court held that:

When the state answers a habeas corpus petition, it has a duty to advise the district court whether the prisoner has, in fact, exhausted all available state remedies. See n. 5, *supra*. [Refers to Rule 5 of the Rules governing § 2254 cases in the United States district courts which requires that the answer to a habeas petition "shall state whether the petitioner has exhausted his state remedies including any post-conviction remedies available to him...."]. As this case demonstrates, however, there are exceptional cases in which the state fails, whether inadvertently or otherwise, to raise arguably meritorious non-exhaustion defense. The state's omission in such a case makes it appropriate for the court of appeals to take a fresh look at the issue. The court should determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim.

*Id.* at 134, 107 S.Ct. at 1675.

We have previously observed that the State asserted the defenses of non-exhaustion and/or procedural default in its Answer to Show Cause (R., Vol. I, Tab 9). However, the State did not object to the magistrate judge's findings or recommendations, which did not, in any event, address the exhaustion/procedural default defenses. This panel is divided on the issue as to whether, under these circumstances, the State waived these defenses on review to the district court by its failure to raise them as objections to the magistrate judge's findings and/or recommendations. However, we need not decide this issue because we conclude that, under *Granberry*, it is appropriate for a federal appellate court to address the merits of unexhausted § 2254 federal habeas corpus claims if they fail, as here, to raise even a colorable federal claim, and if the interests of justice would be better served by addressing the merits of the habeas petition. 481 U.S. at 135, 107 S.Ct. at 1675. *Granberry* reasoned that "[i]f the court of appeals is convinced that the petition has no merit, a belated application of the exhaustion rule might simply require useless litigation in the state courts." *Id.* at 133, 107 S.Ct. at 1674.

We conclude that the claims advanced by Miranda are without merit.

### Appellate Contentions

On appeal, Miranda argues that (1) his Fourth Amendment rights were violated by the trial court's failure to exclude evidence obtained in the execution of search warrants for his house and for his truck, (2) the district court's limitation on cross-examination of the government's principal witness violated the confrontation clause of the Sixth Amendment, and (3) consecutive sentences for distribution and possession with intent to distribute violated his due process rights and the double jeopardy clause of the Fifth and Fourteenth Amendments.

### II.

Miranda argues that his Fourth Amendment rights were violated by the State trial court's failure to exclude evidence obtained in the execution of search warrants for his house and for his truck.

Miranda contends that he was not provided an opportunity for full and fair litigation of his Fourth Amendment claims in the Colorado state trial court because he was not provided a hearing as required by *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In that case,

the Supreme Court held that in order to support an evidentiary hearing in a challenge to the veracity of statements contained in search warrant affidavits, a defendant must make a substantial preliminary showing of deliberate falsehood or reckless disregard for the truth. The Court explained that an attack on an affiant's veracity must be more than conclusory and that there must be allegations accompanied by affidavit or offer of proof of deliberate falsity or reckless disregard. *Id.* at 171, 98 S.Ct. at 2684.

■ Whether a petitioner is precluded under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) from litigating Fourth Amendment claims in a 28 U.S.C. § 2254 habeas proceeding because he was accorded a full and fair opportunity to litigate the same claims in state court is a question this court reviews *de novo. Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir.1978).

■ We have carefully examined the record relative to the challenge posited by Miranda. We conclude that the only claims presented to the State trial court by Miranda, although he was granted adequate time to present others, were that (a) the affidavit supporting the search of the house contained insufficient facts to establish probable cause, and (b) the affidavit supporting the warrant for search of the truck contained three false facts without which probable cause was not established. These claims were fully presented to and considered by the trial court and by the Colorado Court of Appeals, both of which found/concluded that the affidavits, read individually and/or together, established probable cause for the arrest of Miranda and the searches of his house and his vehicle. Those courts applied the *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) "totality of the circumstances" approach in determining whether the affidavits contained sufficient information to establish probable cause.

Miranda did not present any contention on appeal to the Colorado Court of Appeals that the State trial court should have granted him a *Franks v. Delaware* hearing. In any event, Miranda's attack on the veracity of the affiants was conclusory and did not constitute a preliminary showing of deliberate falsity or reckless disregard.

In *Gamble,* we held that *Stone's* "opportunity for full and fair consideration" and/or "litigation" includes, but is not limited to the procedural opportunity to raise or otherwise present a Fourth Amendment claim, and the full and fair evidentiary hearing contemplated by *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). That case dictated that a federal district court in a habeas corpus proceeding must conduct an evidentiary hearing when the facts are in dispute and the state did not extend an opportunity for the full and fair consideration of Fourth Amendment claims.

We conclude that the State of Colorado did extend to Miranda the opportunity for the full and fair opportunity to litigate his Fourth Amendment claims. Accordingly, we hold that under *Stone,* Miranda is precluded from litigating his Fourth Amendment claims in federal court.

### III.

Miranda argues that the state district court's limitation of his cross-examination of the government's principal witness, Hannah, violated the confrontation clause of the Sixth Amendment.

■ Determinations about whether confrontation rights were violated by reason of improper restrictions on cross-examination and whether any violation of confrontation rights was harmless, are ultimate legal conclusions subject to *de novo* review. *United States v. Ellzey,* 936 F.2d 492, 495 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 400, 116 L.Ed.2d 350 (1991); *Graham v. Wilson,* 828 F.2d 656, 659 (10th Cir. 1987), *cert. denied,* 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988).

■ A defendant's constitutional right to confront adverse witnesses is not absolute or unlimited. *United States v. Atwell,* 766 F.2d 416, 419–20 (10th Cir.), *cert. denied,* 474 U.S. 921, 106 S.Ct. 251, 88 L.Ed.2d 259

(1985). The right of cross-examination is tempered by policy considerations relating to unfair prejudice, confusion of triable issues, undue delay, presentation of cumulative evidence, and concern that the jury may be misled. *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435; *Ellzey*, 936 F.2d at 496.

█ Miranda contends that he was improperly limited in his cross-examination of the state's principal witness, Hannah, a confidential informant for the prosecution.

Miranda acknowledges that the state trial court did permit him to inquire of Hannah about the number and general nature of his dealings with law enforcement agencies, whatever benefits, such as payment of money or lenient treatment, Hannah had received from the state, the nature of any plea bargains, and Hannah's past felony convictions. The trial court, however, did not permit a defense expert to testify whether Hannah might have supplied the cocaine himself. Further, the court did not allow Miranda's counsel to inquire into the particulars of Hannah's drug dealings.

Miranda argues that Hannah had the opportunity to plant the drugs in Mr. Benavidez's home in July, 1985. He contends that the difference in purity between the cocaine involved in the actual transaction and the cocaine found in Mr. Miranda's home supports his claims that Hannah supplied the former. Miranda states that although police searched Hannah before the transaction, they did not perform a cavity search in which he could have concealed drugs. Further, he contends that although Hannah was wired, the monitor malfunctioned so that police could not hear his conversations and activities in Mr. Benavidez's home. Miranda concludes by arguing that the theory that Hannah was stealing cocaine from the police department and that Hannah supplied the cocaine involved in the transaction was not collateral, as labeled by the state trial court, or a fishing expedition concerning Hannah's unrelated background as labeled by the Colorado Court of Appeals.

Here, the jury was apprised of Hannah's statements to others that he had, in effect, "set up" Miranda and "ripped off" the police and of Hannah's opportunity to have "planted" the cocaine in Mr. Benavidez' home. Accordingly, Miranda's proposed line of inquiry into details of Hannah's other drug dealings, including whether or not he switched drugs in other cases, would not have been probative of Hannah's truthfulness or untruthfulness or whether Hannah, rather than Miranda, was guilty of the crime charged. Such inquiries were based on rank speculation and, if permitted, would have injected collateral issues into the case which would have distracted the jury from resolving the triable issues.

We hold that the trial court did not abuse its discretion in limiting Miranda's cross-examination of Hannah. *See Van Arsdall.* Any reversal of a conviction on the basis of undue limitation upon cross-examination must demonstrate a denial of a right of confrontation as guaranteed by the Sixth Amendment, or an abuse of discretion; further, the discretion exercised by the trial court will not be upset unless it is determined to be prejudicial. *United States v. Walton*, 552 F.2d 1354, 1364 (10th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977). No prejudice occurred here.

In *Tapia v. Tansy*, 926 F.2d 1554 (10th Cir.1991), we observed:

... [t]he Confrontation Clause ensures the defendant the opportunity to engage in "effective cross-examination of witnesses against him," *Pennsylvania v. Ritchie*, 480 U.S. [39] at 53, 107 S.Ct. [989] at 999, [94 L.Ed.2d 40 (1987) ], but it does not include "the power to require the ... disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 51, 107 S.Ct. at 998. Effective cross-examination only requires that the trial judge not limit the scope of cross-examination so that it prevents the jury from having sufficient information to make a "discriminating appraisal" of the relevant issue.

*Id.* at 1559.

Here, the jury had sufficient information before it to make a "discriminating apprais-

al" of the relevant issue, i.e., Miranda's innocence or guilt.

## IV.

■ Miranda contends that the consecutive sentences imposed upon him for distribution and possession with intent to distribute violated his due process rights and the double jeopardy clause of the Fifth and Fourteenth Amendments. We review this claim *de novo. Nichols v. Sullivan,* 867 F.2d 1250, 1252 (10th Cir.1989).

Citing to *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) for the rule that the double jeopardy clause of the Fifth Amendment "[p]rotects against multiple punishments of the same offense," Miranda contends:

> To answer whether or not Mr. Miranda's double jeopardy rights were violated, the court looks at the elements of the offense, and also whether the counts were founded upon different facts. The distribution count was based on the cocaine distributed to Mr. Benavidez and Mr. Hannah, and the possession count was based upon cocaine found in Mr. Miranda's house. The evidence reflected Mr. Miranda came directly from his house to Mr. Benavidez's home to distribute cocaine. The evidence also indicated the likelihood Mr. Miranda would have distributed the remainder of the cocaine to Mr. Benavidez, where according to police, he had done so previously on July 19 and July 25. Mr. Miranda claims that the evidence did not show two separate wrongs which could be separately punished.

(Appellant's Reply Brief, pp. 6–7).

■ Miranda's double jeopardy claim, then, is anchored to the proposition that he should not have received consecutive sentences for different parts of a single transaction. Our review of the record, however, demonstrates the fallacy of this contention.

Under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) even though the elements of separate counts are identical, a person is not subjected to double jeopardy if the separate counts are based upon different facts. *Blockburger* upheld separate convictions on separate counts where there were successive sales of narcotics; each was held to be a distinct offense.

■ There are two components of the double jeopardy clause. The first protects against subsequent prosecution for the same offense after either acquittal or conviction. The second protects against multiple punishment for the same offense. *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). And it is well established that if the legislature determines that a person should be punished separately for each step leading to the consummation of a criminal transaction, there is nothing in the United States Constitution prohibiting it from doing so. *Garrett v. United States,* 471 U.S. 773, 779, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985). Colorado courts have construed their criminal statutes to permit consecutive sentencing on counts which are not supported by identical evidence. *See Qureshi v. District Court,* 727 P.2d 45 (Colo.1986); *People v. Montgomery,* 669 P.2d 1387 (Colo.1983).

The distribution of cocaine conviction of Miranda was based upon cocaine Miranda supplied to Benavidez and Hannah; the possession of cocaine conviction, however, was based upon the cocaine found in Miranda's home. There was no evidence that the cocaine found in Miranda's home was meant for Hannah. We agree with the government's argument that the amount of cocaine and the sizable amount of cash found in Miranda's home supports a reasonable inference that Miranda was involved in an ongoing business of trafficking drugs to individuals other than Hannah. And, viewed in the light most favorable to the State, the evidence here demonstrates two separate wrongs, punishable separately. *See Martin v. Kaiser,* 907 F.2d 931, 935–36 (10th Cir.1990) ("Each count was based on solicitation of a separate act of first degree murder; the fact that all six solicitations took place at one time does not negate the fact that Martin's convictions, on which the sentencing was

based, were for soliciting the murders of six separate persons. To convict on each count required proof that a different individual was being targeted for murder on each count.")

We conclude that no impermissible multiple punishments were imposed on Miranda in violation of the due process and double jeopardy clauses of the Fifth and Fourteenth Amendments. We also conclude that Miranda's double jeopardy argument is meritless.

## Conclusion

We AFFIRM the district court's dismissal of Miranda's petition for writ of habeas corpus with prejudice.

Miranda shall not be entitled to further federal court forums pursuant to 28 U.S.C. § 2254 arising from his January 17, 1986, Colorado conviction unless he can demonstrate cause for not having exhausted available remedies in the courts of the State of Colorado, and show that he suffers actual prejudice as a result of the alleged violations of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice (factual innocence). Further, should Miranda demonstrate that any such claims are procedurally time barred in the courts of the State of Colorado, he must demonstrate cause therefor, and show actual prejudice/factual innocence in order to obtain federal court review of any such claims. *See McClesky v. Zant,* 499 U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Coleman; Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

AFFIRMED.