**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 3 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MALCOLM RENT JOHNSON,

      Petitioner-Appellant,

v.

DAN REYNOLDS; JAMES L.
SAFFLE, Director, Oklahoma
Department of Corrections; THE
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA,

      Respondents-Appellees.

No. 97-6303
(D.C. No. CIV-97-340-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**MURPHY**, Circuit Judge.

Petitioner-Appellant Malcolm Rent Johnson ("Johnson") appeals the district

court's denial of his federal habeas corpus petition brought pursuant to

28 U.S.C. § 2254. On appeal, petitioner argues that the district court erred by

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

concluding that (1) his Fourth Amendment claim was barred from federal review, legally frivolous, and factually meritless, and (2) his remaining claims, including a claim of ineffective assistance of counsel, were procedurally barred and lacked merit. We exercise jurisdiction under 28 U.S.C. § 2253, and affirm.

**BACKGROUND**

In January 1983, Johnson was convicted, after an Oklahoma state jury trial, of one count of Attempted First Degree Rape After Former Conviction of Two or More Felonies, and one count of Robbery With Firearms After Former Conviction of Two or More Felonies, and sentenced to two consecutive terms of seventy-five years' imprisonment for his involvement in events that took place on October 12, 1981.

According to testimony at trial, during the late morning hours of October 12th, the two victims, Polly Johnson and Maggie Woitchek, entered an art studio, only to find Johnson waiting inside with a gun. Johnson took the women at gunpoint to the front of the studio, threw them to the ground, and instructed them to keep their heads down. Mrs. Johnson testified that she "looked up at him one time, and he hit me in the head with a gun, and then he took my glasses." Johnson then dumped the contents of both of the women's purses onto the floor and began sifting for money.

After some time, Johnson forced the women to the back of the studio, where he locked Mrs. Woitchek in a restroom. Alone in the studio with Mrs. Johnson, petitioner-appellant Johnson demanded money of her, then disrobed her, hit her, and attempted to rape her. After a second attempt to rape Mrs. Johnson, petitioner-appellant Johnson fled when he heard James Weir entering the studio in his wheelchair.

In addition to the eyewitness identifications of Johnson made by Mrs. Johnson, Mrs. Woitchek, and Mr. Weir at trial, the government relied on the expert testimony of Joyce Gilchrist, a serologist working for the state of Oklahoma, and physical evidence seized from Johnson's apartment which provided circumstantial evidence of his guilt — specifically, a key to the art studio, Mrs. Johnson's ChecOKard, and a doll from the studio (all of which Mrs. Johnson reported stolen to the police), as well as a gun that Mrs. Johnson testified "look[ed] like the gun" that petitioner-appellant Johnson hit her with.

The search that led to the discovery of these items was conducted on October 27, 1981, in the course of executing an arrest warrant charging Johnson with possession of a firearm after conviction of a felony. Oklahoma City Police Detective Jewell Fay Smith testified at trial that, upon entering Johnson's residence to execute the arrest warrant, she observed "an oriental doll in ceremonial robes" that she believed could have been the doll that Polly Johnson

had reported stolen from the art studio. Detective Smith further testified that after observing the doll, she "backed out of the apartment," and obtained informed consent to search the residence from Johnson's wife, Eugenia Johnson, who shared dominion over the whole of the residence. In executing the consensual search of the residence, Oklahoma City Police seized the doll, a set of keys from a drawer in a bedside night stand, a gold pillbox from the headboard of the bed, and a CheckOKard and a revolver, both found under the mattress of the bed. Johnson's attorney, an assistant Oklahoma County public defender, claimed that the search violated the Fourth Amendment (because the arrest warrant the police were purportedly executing was a mere pretext for the real purpose of their visit to the Johnson residence, which was to conduct the search); thus, Johnson objected to the admission of the physical evidence seized in the search, but the trial court overruled the objection.

After his conviction and sentence, Johnson, represented by a different attorney from the same Oklahoma County public defenders' office, raised five issues in his direct appeal to the Oklahoma Court of Criminal Appeals, including a claim that the admission of evidence seized from his home violated the Fourth and Fourteenth Amendments to the United States Constitution. Johnson v. State of Okla., No. F-83-432, at 1 (Okla. Crim. App. Apr. 21, 1986) (unpublished). The Oklahoma Court of Criminal Appeals affirmed. Next, Johnson filed an

application for post-conviction relief in Oklahoma state district court, raising the same Fourth Amendment claim rejected on direct appeal, as well as several other claims, including one of ineffective assistance of trial counsel. The state district court denied Johnson's application on grounds of procedural bar. See State of Okla. v. Johnson, No. CRF-81-4932, at 1-2 (Okla. Co. Dist. Ct. July 21, 1995) (unpublished). The Oklahoma Court of Criminal Appeals affirmed. See Johnson v. State of Okla., No. PC 95-928, at 3 (Okla. Crim. App. Mar. 7, 1996) (unpublished).

Thereafter, Johnson filed a petition for writ of habeas corpus in the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 2254, in which he raised the following issues, all of which had been raised in his state postconviction application: (1) his identification at trial by the victims was tainted by an unconstitutionally suggestive identification at the preliminary hearing; (2) the trial court unconstitutionally admitted materially misleading and unreliable hair and fiber evidence; (3) he was deprived of his Sixth Amendment right to effective assistance of counsel at trial; (4) the government failed to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963); (5) the police interrogation procedures following his arrest violated his Fifth and Sixth Amendment rights; and (6) the evidence seized during the search of his apartment and introduced at trial should have been suppressed as the fruit

of an illegal search obtained in violation of the Fourth Amendment.  On referral from the district court, the magistrate judge, applying the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), found the first five claims to be procedurally barred and, alternatively, without merit and harmless in any event. With respect to Johnson's Fourth Amendment claim, the magistrate judge concluded that the claim was barred because Johnson had had a full and fair opportunity to litigate his claim in state court, see Stone v. Powell, 428 U.S. 465, 481-82 (1976), and alternatively that the claim lacked merit.  The district court, upon de novo review, adopted the magistrate's recommendation and denied Johnson's habeas petition.

On appeal, Johnson contends that the district court erred in (1) concluding that he had received a full and fair opportunity to litigate his Fourth Amendment claim, (2) finding procedural bar as to his other claims, and (3) alternatively finding no merit to these remaining claims.  We asked for further briefing from the parties on the discrete issue of whether procedural bar should apply to an ineffective assistance of counsel claim where appellate counsel was from the same public defender's office as trial counsel.  We now affirm.

**DISCUSSION**

**I.     Standard of Review**

Johnson filed his federal petition for habeas corpus relief after the April 24,

1996 effective date of AEDPA, and therefore we apply the provisions of 28

U.S.C. § 2254, as amended by AEDPA.  See Rogers v. Gibson, 173 F.3d 1278,

1282 n.1 (10th Cir. 1999).  Thus, we may not grant Johnson habeas relief:

> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in
>> the State court proceeding.

28 U.S.C. § 2254(d).  Additionally, "a determination of a factual issue made by a

State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).

**II.    Fourth Amendment Claim**

Johnson claims that Oklahoma violated his Fourth Amendment rights when

it introduced at trial the physical evidence seized from his apartment.[1]  The

---

[1]As noted above, the contested items include a doll in ceremonial robes taken from the art studio, a CheckOKard with the name of one of the victims on it, a key that fit the art studio door, and a small gold pillbox taken from the purse of one of the victims.

federal district court dismissed this claim because it believed that Johnson had been given a "full and fair" opportunity to litigate his claim in the Oklahoma courts. See Stone v. Powell, 428 U.S. 465, 482 (1976). We agree.

In Stone, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 482. We have "held that Stone's 'opportunity for full and fair consideration' and/or 'litigation' includes, but is not limited to the procedural opportunity to raise or otherwise present a Fourth Amendment claim, and the full and fair evidentiary hearing contemplated by Townsend v. Sain, 372 U.S. 293 . . . (1963)." Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992).

Here, Johnson does not dispute that he was afforded a full and fair opportunity to litigate the constitutionality of admitting the items seized from his home through the initial in camera hearing conducted by the trial court and the direct review by the Oklahoma Court of Criminal Appeals. An examination of the transcript from that hearing confirms that Johnson had a full and fair opportunity to litigate his Fourth Amendment claim. The trial transcript indicates that during the direct examination of Detective Jewell Fay Smith, as the prosecutor began to

inquire about the search of the Johnson apartment, defense counsel asked for an "in camera hearing as far as probable cause to enter the apartment and probable cause to arrest Malcolm Johnson." Defense counsel continued: "It's my contention that all the evidence obtained inside the home or the apartment are the fruits of an illegal search and entry pursuant to an illegal arrest warrant that was not based on probable cause." The court recessed, dismissed the jury, and reconvened for an in camera hearing. There, defense counsel examined Detective Smith, who testified that she came to the Johnson residence to execute an arrest warrant issued for Johnson based on a charge of carrying a firearm after former conviction of a felony. Detective Smith explained that after she entered the Johnson residence, she observed "an oriental doll in ceremonial robes," which she believed was associated with the attempted rape and robbery of Polly Johnson. Further, Detective Smith testified that upon seeing the doll, she exited the residence and obtained informed consent to search the residence from Malcolm Johnson's common-law wife, Eugenia Johnson. During the in camera examination by the prosecutor, Detective Smith clarified that Eugenia Johnson signed the search waiver freely and voluntarily without any threats or inducements after being read her Miranda rights.

Next, Eugenia Johnson testified at the in camera hearing. In response to the prosecutor's inquiry, Eugenia Johnson explained that the apartment was leased

in her name, that she had "full use of all the inside of that apartment," and that she executed the search waiver after being advised of her <u>Miranda</u> rights, without being threatened or promised anything. Upon questioning by defense counsel, Eugenia Johnson clarified that she had never told anyone that she had been forced into signing the search waiver, that she had never told anyone that she had been threatened into signing the search waiver, and that the police officers never threatened either to take her to jail or to have her children removed from her custody if she failed to sign the waiver.

At the conclusion of the in camera hearing, defense counsel moved to suppress the physical evidence seized during the search based on the Fourth Amendment to the United States Constitution. The trial court overruled the motion to suppress.

On direct appeal, Johnson contended that "the trial court erred in admitting into evidence items seized by the police from his home, in that this evidence was the fruit of an illegal search and seizure." <u>Johnson v. State of Okla.</u>, No. F-83-432, at 3 (Okla. Crim. App. Apr. 21, 1986). He argued that Eugenia Johnson "did not have the authority to waive his 4th and 14th Amendment rights." <u>Id.</u> However, the Oklahoma Court of Criminal Appeals rejected this argument, stating: "The law in Oklahoma is well-settled: When two persons . . . possess common authority over or other sufficient relationship to the premises or effects

sought to be inspected, either of them is capable of consenting to the search. . . . Therefore, this contention is without merit." Id. at 3-4 (quotation omitted) (citation omitted).

While Johnson does not, and could not, argue that the procedures described above deprived him of a full and fair opportunity to litigate his Fourth Amendment claim, he does argue that a later (11 years after trial) recantation by Eugenia Johnson of her testimony, that she freely and voluntarily signed the search waiver prior to the search, entitles him to habeas relief (or at least an evidentiary hearing). We disagree.

Johnson contends that Eugenia Johnson's consent provides the only basis for the search of the Johnson residence,[2] and that once the actuality or validity of that consent is put in doubt, the basis for the search dissolves, and the search and seizure must be declared unconstitutional. Once the search and seizure are found to violate the Fourth Amendment, Johnson argues the physical evidence seized from his residence would have to be excluded from trial, and his conviction would be unreliable.

---

[2]We note that the federal district court intimated that the search and seizure of the items might have been justified under the search incident to arrest and plain view exceptions to the warrant requirement.

We believe that <u>Stone v. Powell</u> precludes the habeas relief he seeks.[3]  In

<u>Stone</u>, focusing on the fact that "[t]he primary justification for the exclusionary

rule then is the deterrence of police conduct that violates Fourth Amendment

rights," the Supreme Court noted that "[p]ost-<u>Mapp</u> decisions have established

that the rule is not a personal constitutional right."  428 U.S. at 486.  Because the

exclusionary rule is a judicially created one, the Court explained that its

application was not universal in criminal law, and that in deciding whether its

application was appropriate, courts balance the benefits sought to be achieved by

the rule against the costs of its application.  <u>Id.</u> at 488-89.  The Court concluded

that the cost of "deflect[ing] the truthfinding process and often free[ing] the

guilty," that are imposed by application of the exclusionary rule persists in the

federal habeas context, <u>id.</u> at 490, but the benefits of deterring police conduct

violative of the Fourth Amendment diminish, <u>id.</u> at 493, and thus the balance tips

against application of the exclusionary rule for Fourth Amendment violations on

federal habeas.  <u>See</u> <u>id.</u> at 494-95.

Thus, the Court concluded that "where the State has provided an

opportunity for a full and fair litigation of [the] Fourth Amendment claim, a state

prisoner may not be granted federal habeas corpus relief on the ground that

---

[3]Additionally, we note that we see no error in the district court's alternative
ruling that Johnson's claim has no merit.

evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494 (footnotes omitted).

Here, we have held that the state of Oklahoma provided Johnson an opportunity for full and fair litigation of his Fourth Amendment claim. However, he contends that a recent recantation of testimony central to that earlier, state litigation of his Fourth Amendment claim entitles him to relief. But the fact remains that Johnson litigated his Fourth Amendment claim in the state courts, and the prohibition against our application of the exclusionary rule on federal habeas precludes the relief Johnson seeks. Accordingly, we affirm the district court's denial of this claim.

### III. Johnson's Remaining Claims

The district court dismissed Johnson's five remaining claims on the ground that the Oklahoma courts had held them to be procedurally barred by independent and adequate state law grounds and alternatively on the ground that they lacked merit and, in any event, any error was harmless. The claims dismissed by the district court are: (1) Johnson's identification at trial by the victims was tainted by an unconstitutionally suggestive identification at the preliminary hearing; (2) the trial court unconstitutionally admitted materially misleading and unreliable hair and fiber evidence; (3) Johnson was deprived of his Sixth Amendment right

- 13 -

to effective assistance of counsel at trial; (4) the government failed to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963); and (5) the police interrogation procedures following Johnson's arrest violated his Fifth and Sixth Amendment rights.

Johnson now contends that when he did raise these claims in Oklahoma state court, via an application for postconviction relief, the Oklahoma courts' dismissal of the claims did not "unequivocally rest[] upon a state procedural default,"[4] Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991), and thus we should reverse the district court's dismissal predicated on the ground of independent and adequate state procedural bar. It is well established that a state procedural bar will not preclude federal habeas review unless the last state court to adjudicate

---

[4]In his petition for a writ of habeas corpus in the district court, Johnson claimed that he had raised his first claim in his state direct appeal. While he did make a claim related to eyewitness identification on state direct appeal, that claim alleged simply that "the trial court committed fundamental error by refusing to include a precautionary instruction on eye-witness identification. His federal habeas claim related to eyewitness identification alleges that "[t]he identification of Petitioner at trial by Polly Johnson and Marguerite Woitchek was tainted by the unconstitutionally suggestive identification of Petitioner at the Preliminary Hearing and therefore violated Petitioner's Rights under the Fifth and Fourteenth Amendments to the United States Constitution." Though both claims attempt to undermine the eyewitness testimony damaging to Johnson, the substance of the claims is very different. It was the latter claim, that Johnson raised in his application for postconviction relief, that was deemed procedurally barred (because it was not raised on direct appeal) by the Oklahoma Court of Criminal Appeals. Thus, we conclude that Johnson failed to raise claim one of his federal habeas petition on state direct appeal.

- 14 -

the issue relied on state procedural bar. Ylst, 501 U.S. at 801-03; Hooks v. Ward, No. 98-6196, 1999 WL 502608, at *7 (10th Cir. July 16, 1999).

Here, Johnson argues that the Oklahoma Court of Criminal Appeals did not clearly indicate that it was affirming the denial of his application for postconviction relief based on state procedural bar. That court stated:

> Petitioner has failed to show that he is entitled to any relief in a post-conviction proceeding. Of the eight (8) propositions (one with sub-propositions) presented in his application, he has not raised any issues that he did not or could not have raised in his direct appeal. Hale v. State, 807 P.2d 264, 266-67 (Okla. Cr. 1991). In two of his propositions, Petitioner alludes to possible reasons why those issues were not raised or were insufficiently raised in his direct appeal. However, those reasons are not sufficient to allow the propositions to be the basis of this subsequent post-conviction application. 22 O.S. 1991, § 1086.

Johnson v. State of Okla., No. PC 95-928, at 1-2 (Okla. Crim. App. Mar. 7, 1996) (unpublished). In light of the fact that the case and the statute cited by the Oklahoma Court of Criminal Appeals are clear invocations of the state procedural bar for claims which "could have been raised on direct appeal, but were not," Hale, 807 P.2d at 266; see also Okla. Stat. Ann. tit. 22, § 1086, we believe that the Oklahoma Court of Criminal Appeals dismissed the claims presented in Johnson's first five claims in his federal habeas petition on the basis of state procedural bar.

Thus "[f]ederal-court review of the claim[s are] . . .barred unless respondent can establish 'cause and prejudice' for the default, see Murray v.

- 15 -

Carrier, 477 U.S. [478], 493, 495-96 [1986]." Ylst, 501 U.S. at 806.  In his petition for habeas corpus before the federal district court, Johnson explained that he failed to raise these claims on state direct appeal because his "appellate counsel refused and/or neglected to raise the issue."  The district court construed these statements as an effort by Johnson to show cause for defaulting the claims in state court; however, the district court found no appellate attorney error for failing to raise the claims, and thus the district court found Johnson did not meet the "cause and prejudice" standard of Murray.  Before this court, Johnson has not argued that his state procedural default should be excused because of his state appellate counsel's performance; thus we do not consider the issue.  Accordingly, we dismiss claims 1, 2, 4, and 5 on this ground.[5]

Johnson's third federal habeas claim alleged several instances of ineffective assistance of trial counsel.[6]  The district court lumped this claim in with claims 1, 2, 4, and 5 in its general discussion of state procedural bar.  However, this court has recognized that federal habeas claims involving assertions of ineffective

---

[5]Once again, we note that we find no error in the district court's alternative ruling that these claims are without merit.

[6]Specifically, Johnson claims that his trial counsel was ineffective for: (1) waiving Johnson's fundamental right to an alibi instruction; (2) failing to request a state-appointed expert to rebut the testimony of Joyce Gilchrist; (3) failing to investigate the basis for objections to inadmissible evidence; (4) failing to make an opening statement; (5) failing to object to inflammatory statements made by the prosecutor during closing argument; and (6) failing to request a jury instruction regarding the unreliability of eyewitness testimony.

assistance of counsel must be treated differently than other claims for procedural bar purposes. See English v. Cody, 146 F.3d 1257, 1261-63 (10th Cir. 1998). In English, we held that Supreme Court and Tenth Circuit authorities "mandate . . . that this court never apply a state procedural bar [to an ineffective assistance of counsel claim] when trial and appellate counsel are the same." Id. at 1263.[7]

Johnson concedes that he was represented by different lawyers at trial and on appeal. However, because both his trial lawyer, Robert A. Ravitz, and his lawyer on direct appeal, Thomas J. Ray Jr., worked for the Oklahoma County Public Defender's Office, Johnson argues that the two should be treated as the same lawyer for the purposes of analyzing the issue of procedural bar under English v. Cody. Because of the novelty of this issue, we ordered the parties to address it in supplemental briefing.

---

[7]We set out the two prerequisites for a state procedural bar to be applicable on federal habeas, as follows:

> [N]o state procedure for resolving claims of ineffective assistance [of counsel] will serve as a procedural bar to federal habeas review of those claims unless the state procedures comply with the imperatives set forth in Kimmelman [v. Morrison, 477 U.S. 365 (1986)]: (1) allowing petitioner an opportunity to consult with separate counsel on appeal in order to obtain an objective assessment of trial counsel's performance and (2) providing a procedural mechanism whereby a petitioner can adequately develop the factual basis of his claims of ineffectiveness.

English, 146 F.3d at 1263.

At the root of the <u>English</u> rule requiring different counsel at trial and on appeal in order for a federal court to respect a state bar as to a claim of ineffective assistance of trial counsel is the recognition that a "layman will ordinarily be unable to recognize counsel's errors and to evaluate counsel's professional performance." <u>Kimmelman</u>, 477 U.S. at 378. Likewise, we believe a lawyer who performs inadequately at trial will be unlikely or unwilling to realize his or her representational deficiencies on appeal,[8] and will be awkwardly situated to call the appellate court's attention to deficient performance below.[9]

At least this second concern is implicated in cases where a defendant is represented by two lawyers from the same public defender's office at trial and on direct appeal. When an appellate attorney regularly works closely in the same

_____

[8]Even if appellate counsel is different here, the Motion for New Trial was signed by the trial counsel.

[9]In fact, in order for an attorney on appeal to make out a claim that he provided constitutionally ineffective representation at trial, he would have to argue, on the public record, that he "was not a reasonably competent attorney," <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984) (quotation omitted), that he failed to "bring to bear such skill and knowledge as [would have] render[ed] the trial a reliable adversarial testing process," <u>id.</u> at 688, that his errors were "so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," <u>id.</u> at 687, that his performance was so poor that it fell outside "the wide range of reasonable professional assistance," <u>id.</u> at 689, and that but for his gross mis- or under-representation of his client, his client would have been acquitted (or received a lesser sentence), <u>see id.</u> at 694 (to prevail under <u>Strickland</u>'s prejudice prong, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

public defender's office with the lawyer who represented the defendant at trial, principles of collegiality may work against that appellate lawyer vigorously seeking to identify and argue trial attorney error. It is for this reason that two lawyers from the same private law firm are often treated as the same for conflict of interest purposes. Cf. Martinez v. Sullivan, 881 F.2d 921, 930 (10th Cir. 1989) (assuming without deciding that the two law partners should be considered as one attorney for conflict of interest purposes). Although it is possible that greater latitude may be allowed in a not-for-profit organization like a public defender's office because the two lawyers are not tied together by a common profit motive, the fact remains that the two lawyers even in a public defender's office are professional colleagues.[10]

However, in this case, we do not need to decide the issue of whether English's separate counsel requirement can be met when different lawyers from the same public defender's office represent the same defendant at trial and on appeal. We have evaluated Johnson's claims of ineffective trial counsel on the merits and we agree with the Magistrate's Report below, adopted by the district court, that such claims are without merit. Accordingly, we affirm the denial of

---

[10]Here, the record is inadequate for us to evaluate whether there was separation between trial counsel and appellate counsel within the Oklahoma County Public Defender's Office and, if so, whether the separation was sufficient to counteract institutional and personal loyalties that might impair the inclination of appellate counsel to challenge the sufficiency of trial counsel's performance.

habeas relief on the issue of ineffective counsel on the merits, without reaching the issue of procedural bar.

AFFIRMED.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge