STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 15-0405** (Mercer County 14-F-141)

**Oscar Ross Combs, Sr.**
**Defendant Below, Petitioner**

**FILED**

**June 8, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

The petitioner, Oscar Ross Combs, Sr., by counsel Colin Cline and Ward Morgan, appeals the circuit court's judgment order of February 11, 2015, entered in accordance with the jury's verdict, convicting him of the first-degree murder of James "Bo" Butler, of conspiracy to commit the same, and of first-degree robbery. The State of West Virginia appeared by Deputy Attorney General Laura Young, on behalf of Attorney General Patrick Morrisey.

This Court has considered the parties' briefs, their oral arguments, and the record on appeal. Upon consideration of the standard of review, the briefs and arguments, and the record presented, the Court discerns no substantial question of law and no prejudicial error. Consequently, a memorandum decision affirming the order of the circuit court is the appropriate disposition pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

On April 22, 2011, as Tommy Thomas was looking for scrap metal in a remote area of Wyoming County, on Herndon Mountain near the Mercer County line, he discovered a dead body beyond the crest of an earthen bank surrounding part of a makeshift dump. The body—clad in jeans, a flannel shirt, and boots—had decomposed such that it could not readily be identified. No personal effects were found on the body, and the pockets of the jeans had been cut open. An autopsy revealed that the victim had been shot in the back of the head by a small-caliber handgun. The body was fingerprinted and the exemplars compared to a police databank, whereby the victim was identified as Butler, who had disappeared while driving to Pineville from Summers County on April 4, 2011. According to carrier records, Butler had last used his cell phone in Mercer County to text his girlfriend, but ground and air searches of the vicinity had proved fruitless.

1

The investigation remained stagnant until the West Virginia State Police received a tip in October 2013. The tip resulted in the arrest of Combs, his wife Linda, and their son, Oscar Combs, Jr. ("Junior"), all of whom were indicted by the grand jury in Mercer County on June 10, 2014, and charged in Count 1 with first-degree murder, *see* W. Va. Code § 61-2-1 (1991), in Count 2 with first-degree robbery, *see id.* § 61-2-12(a)(1) (2000), and in Count 3 with conspiracy to commit murder, *see id.* § 61-10-31 (1971).

The proceedings against Combs were severed, and his trial commenced before a jury on January 6, 2015. Junior appeared as a witness for the prosecution in accordance with an agreement whereby he pleaded guilty to Counts 1 and 2 of the indictment, for which he was sentenced on the murder to life imprisonment with the possibility of parole, and to a consecutive twenty-five-year term for the robbery. Junior testified that he was eighteen years old on April 4, 2011, and that his mom had awoken him before dawn that morning, handing him a .22 revolver that he often carried around on trips with his dad. Combs retrieved a shotgun, and he and Junior left in the family's Ford Bronco to travel to Herndon Mountain. Combs and Butler were acquainted from having worked together, and they had arranged a meeting that morning so that Butler could obtain some cable clamps he needed to construct a building. According to Junior, however, the meeting was intended to waylay Butler, in that Combs knew that Butler had recently been paid and was therefore likely to have considerable cash on his person.

Junior told the jury that he and Combs got to the meeting site a few moments before Butler, parking the Bronco alongside the road just on the Mercer County side of Herndon Mountain. Combs produced a .32 semi-automatic from his hooded sweatshirt and stuck the pistol in Junior's ribs. Combs demanded that Junior use the .22 to shoot Butler, who by then had arrived at the scene in his Chevrolet S-10 pickup, pulling in behind the Bronco. Butler retrieved the cable clamps from the Bronco's open hatch, after which he turned around to walk back to his truck. Combs shoved his pistol in Junior's back, impelling Junior to follow Butler and shoot him in the head from behind. Junior complied.

Junior recounted that, after he and Combs placed Butler's body in the bed of the S-10, he got in the driver's seat of the pickup and followed Combs to a secluded gas well road. There, the duo used supplies in the Bronco to paint the truck. Junior drove the Bronco back home for some gasoline to fuel the truck, and, by the time he returned, the body had been taken away. Junior followed Combs home with the pickup, which Combs disassembled. Combs sold some of the parts, with the rest being buried or otherwise disposed of. Combs gave away the .22, but the revolver was eventually recovered and Junior identified it at trial as the murder weapon; fragments recovered from Butler's skull were determined through ballistic examination to have been the remains of a .22 bullet that could have been fired by the revolver. Junior added that, not long after the incident,

2

he heard Combs express disappointment concerning the scant proceeds of the robbery, lamenting to Linda that "Bo wasn't worth doing."

The jury received the case for deliberation on the third day of trial, January 8, 2015, and, late that afternoon, it found Combs guilty as charged in the indictment. In conformance with the special verdict form reflecting the jury's determination not to recommend mercy, the circuit court sentenced Combs on February 11, 2015, to life imprisonment without parole on the murder conviction, plus consecutive prison terms of eighty years for robbery and of one to five years for conspiracy. Combs appeals.

Within his brief on appeal, Combs identified two issues. At oral argument, however, his counsel advised this Court that Combs would no longer pursue his assertion of error with respect to the circuit court's discretionary denial of his pretrial motion to transfer venue from Mercer County. Thus, the sole issue remaining for our consideration is Combs's contention that the prosecution failed to sufficiently prove, as an essential element of its case, the identity of the deceased body found at the disposal scene.

In accordance with settled law, "'[t]o prove the *corpus delicti* in a case of homicide two facts must be established: (1) The death of a human being and (2) a criminal agency as its cause.'" Syl. pt. 4, *State v. Garrett*, 195 W. Va. 630, 466 S.E.2d 481 (1995) (quoting syl. pt. 4, *State v. Hall*, 172 W. Va. 138, 304 S.E.2d 43 (1983)); *see State v. Myers*, 171 W. Va. 277, 280, 298 S.E.2d 813, 817 (1982) ("In any case of homicide there must be proof of the identity of the deceased and the causation of death."). Combs suggests that the jury could not conclude beyond a reasonable doubt that the body recovered by the police was Butler's. In so maintaining, Combs emphasizes that Junior—the prosecution's lone eyewitness—had never met Butler prior to their deadly encounter, and he therefore was unable to positively identify the recovered body. Regarding the fingerprint evidence introduced through the medical examiner, Dr. Nabila Haikal, Combs points out that Dr. Haikal's trial identification was not grounded in her own findings and conclusions, but that she merely reiterated those of an unspecified representative of law enforcement who had conducted the actual comparison and reported thereon. Combs did not object to Dr. Haikal's testimony, although counsel cross-examined her on the point.

Combs asserts merely that the hearsay evidence of the victim's identity lacked the probative force necessary to sustain his conviction for murder. Because Dr. Haikal's testimony was admitted without objection, our review of the matter is governed by the plain error doctrine. *See State v. Fleming*, ___ W. Va. ___, ___S.E.2d ___, No. 14-1141, 2016 WL 962722 (W. Va. Mar. 7, 2016). Combs's conviction will therefore remain undisturbed unless we discern "'(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.'" *Fleming*, 2016 WL 962722 at *9 (quoting syl. pt. 7, *State v. Miller*, 194

3

W. Va. 3, 459 S.E.2d 114 (1995)). Had Combs objected to the testimony strictly on hearsay grounds, we doubt that its admission would have constituted error. *Cf. State v. Kennedy*, 205 W. Va. 224, 230, 517 S.E.2d 457, 463 (1999) (observing that autopsy reports "necessarily fall[] within the ambit of the public records hearsay exception" within Rule 803(8) of the West Virginia Rules of Evidence), *overruled on other grounds by* syl. pt. 7, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006). Combs produced no evidence at trial that the fingerprint identification process employed here by law enforcement lacked any indicia of reliability, nor did he suggest that the body found at the disposal scene was that of a specific person other than Butler.

Even assuming *arguendo*, however, that Dr. Haikal's identification testimony should have been excluded as inadmissible hearsay, there yet remained sufficient evidence for the jury to conclude beyond a reasonable doubt that the victim's body was indeed that of Butler. Most fundamentally, of course, Butler had not turned up alive by the time of trial, and the jury could reasonably have concluded that his cell phone having last been used in the general vicinity of the body's discovery was more than a mere coincidence. Moreover, Junior told the jury that he had overheard Combs say that "Bo" Butler—and not some other person—"wasn't worth doing." Finally, other details of Junior's testimony, *e.g.*, the make and model of Butler's truck and Combs's awareness of Butler's payday and his tendency to carry cash, were probative of the victim's identity and corroborated by record evidence.

The third prong of *Miller* instructs that an established error affects the defendant's substantial rights if it was prejudicial. That is, the error "must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice." Syl. pt. 9, *Miller*. In consideration of all the evidence at trial proving the *corpus delicti* of the charged homicide, we cannot say that Combs's substantial rights were affected by the jury's consideration of Dr. Haikal's identification testimony. The admission of that hearsay testimony at trial does not, therefore, constitute plain error of which *Miller* requires correction.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED: June 8, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II